(No. 11363.—Judgment affirmed.)

THE PEORIA RAILWAY TERMINAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed June 21, 1917.*

1. WORKMEN'S COMPENSATION—*evidence that injury arose out of and in the course of the employment may be circumstantial— burden of proof.* The burden rests upon the claimant, in an action under the Workmen's Compensation act, to show that the injury arose out of and in the course of the employment, and the proof of such facts, where the injury results in death, may be by circumstantial as well as by direct evidence, but it must rest upon something more than a mere guess, conjecture or surmise.

2. SAME—*when acceleration or aggravation of pre-existing disease is an accidental injury.* Where a workman dies from a preexisting disease which is aggravated or accelerated under circumstances which can be said to be accidental, his death may be said to have resulted from accidental injury.

3. SAME—*when an injury to a railroad fireman is accidental although aggravated by a pre-existing disease.* A recovery may be had, under the Workmen's Compensation act, for the death of a railroad fireman who fell from his cab and subsequently died without recovering consciousness although an autopsy showed that he had a pre-existing disease which predisposed him to the hemorrhage of the brain and ruptured blood vessel which the attending physician testified caused his death, where the physician also testified the work of the fireman might have ruptured the blood vessel.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

JACK, IRWIN & JACK, for plaintiff in error.

CHARLES S. STUBBLES, and ELMER J. SLOUGH, for defendants in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

J. Frank Pearce, intestate of defendant in error Myra Pearce, was employed by the plaintiff in error as a fireman. On March 15, 1916, while firing on a switch engine, he

fell therefrom and death resulted.  His administratrix, who was his widow, filed a claim before the Industrial Board, and on the hearing before the arbitrators an award was found in her favor in the sum of $8.25 a week for a period of 416 weeks.  Appeal being taken to the Industrial Board, the award of the committee of arbitration was affirmed.  On a writ of *certiorari* sued out in the circuit court of Peoria county the award of the Industrial Board was affirmed and the writ was quashed, the trial court certifying that in his opinion the cause was of such nature that it was proper to be reviewed by this court.  This writ of error was thereafter sued out to review the judgment of the circuit court and the award of the Industrial Board.

The record shows that the deceased during his lifetime had been a machinist, concrete construction foreman, switchman and fireman, employed by various manufacturing establishments and railroads.  He had been in the employ of the plaintiff in error company as a fireman on a switch engine only one day prior to his death.  During his first day's employment he was acting as a fireman on the switch engine on the northerly end of the road, between South Bartonville and Peoria, but had never been over the southerly end of the road from South Bartonville to Pekin, and the trip that was being taken on the second day of his employment, the day of his death, was his first trip over that portion of the road as fireman.  On this trip there were four persons in the cab of the switch engine:  the deceased, acting as fireman, the engineer and two switchmen.  Between twelve and one o'clock in the afternoon on March 15 this engine, drawing several cars, was going from South Bartonville to Pekin.  Within a few hundred feet of the bridge crossing the Illinois river at Pekin, as they were passing North Sap switch and while running between eight and twelve miles an hour, the engineer, Fisher, last saw the deceased engaged in the duties of firing the engine. Fisher testified that he turned his head to look towards the

279 – 23

track along the front of the engine, and the next thing he knew the fireman had disappeared. The two switchmen on the engine testified that they were looking out of the cab window at freight cars on the switch tracks so as to judge of the switching work to be done that day, and while they were thus looking the fireman disappeared. The road-bed was practically level at this point, and the testimony is that the engine was running smoothly at the time, without any special jolting. As soon as the engineer noticed the disappearance he ran his engine back about 600 or 700 feet, where they found Pearce unconscious, lying on the side of the embankment, which at that point was about twelve feet in height. There were certain scalp wounds on the back of his head, evidently caused by the fall from the engine cab. He was hurried to a hospital, where he died shortly after without regaining consciousness. An autopsy was held under the direction of the coroner by the county physician, Dr. C. W. Miller, assisted by Dr. Albert Weil. Dr. Miller testified that the deceased died from hemorrhage of the brain and fracture of the skull, but whether the hemorrhage was caused by the fracture he could not say. The physicians found a portion of the brain soft,—about the size of an English walnut,—and the hemorrhage apparently emanated from that soft portion of the brain. Dr. Weil testified that this strain on the brain was caused by a ruptured blood vessel; that in his judgment the fall could not have produced that condition; that the cause of the condition was syphilis, and that scars on other parts of Pearce's body indicated that disease; that the fall would aggravate such a condition and hasten results; that the exercise of shoveling would cause blood pressure and might cause a ruptured blood vessel. Dr. Miller testified that a fracture of the skull would never cause death unless there was a subsequent hemorrhage, but that hemorrhage of the brain might cause death without subsequent fracture; that the blow that caused the fracture could possibly have caused

the rupture of the blood vessel; that the hemorrhage caused the softening of the brain; that the hemorrhage might have been spontaneous or have been caused by a blow; that the softened condition of the brain might be the result of disease. The administratrix testified that she had been married to the deceased one year and that since their marriage he had always been in good health. When he came to work that morning, the engineer and switchmen testified he was jolly and good-natured, and they saw no indications while he was at work in firing the engine that indicated in any way that he was not in good health.

Counsel for plaintiff in error contend that the proof does not show that the accident and injury arose out of and in the course of the employment of the deceased, as required by the statute as construed by this court. There is no question, under the decisions, that the burden rests upon the claimant to show, by competent testimony, not only the fact of the injury but that it arose out of and in the course of the employment of the deceased, and that such proof must be based upon something more than a mere guess, conjecture or surmise. (*Ohio Building Vault Co.* v. *Industrial Board,* 277 Ill. 96; Elliott's Workmen's Comp. Act,—7th ed.—14.) The proof of these facts may be by circumstantial as well as by direct evidence. When it is said that the claimant must prove his case, "it is not meant that he must necessarily prove it by direct evidence that somebody actually saw what took place, because in many cases that is impossible. Although the onus of proving that the injury by accident arose both 'out of' and 'in the course of' the employment rests upon the applicant, these essentials may be inferred when the facts proved justify the inference. On the one hand the arbitrator must not surmise, conjecture or guess; on the other hand he may draw an inference from the proved facts so long as it is a legitimate inference. It is, of course, impossible to lay down any rule as to the degree of proof which is sufficient to justify an inference being

drawn, but it is safe to say that the evidence must be such as would induce a reasonable man to draw it. If the facts proved give rise to conflicting inferences of equal degrees of probability, so that the choice between them is mere matter of conjecture, then the applicant fails to prove his case; but where the known facts are not equally consistent, where there is ground for comparing and balancing probabilities at their respective value, and where the more probable conclusion is that for which the applicant contends, the arbitrator is justified in drawing an inference in his favor." (Elliott's Workmen's Comp. Act,—7th ed.—19.) "The inference of fact is properly made when, if the facts are established, the judge or arbitrator is led by those facts to think that a further fact could be proved. If he has not done that and is not guided by the facts he is guessing. If he is guided by the facts then he is not guessing but inferring, and if there is material for him to do that, he is the judge of it and not we. The only question here is whether, on the facts he has found, he has properly inferred the further fact." (*Bates* v. *Mirfield Coal Co.* (1913) 6 B. W. C. C. 165. See, also, 1 Honnold on Workmen's Comp. sec. 126.) Even where a workman dies from a pre-existing disease, if the disease is aggravated or accelerated under certain circumstances which can be said to be accidental, his death results from injury by accident. Acceleration or aggravation of a pre-existing disease is an injury caused by accident. (1 Bradbury on Workmen's Comp. 385; Elliott's Workmen's Comp. Act,—7th ed.—9, and cited cases.)

Numerous cases that are somewhat similar in facts to those here involved have been decided in various jurisdictions under statutes similar in wording to our own, as to an accident arising out of and in the course of the employment. It has been said that "cases are valuable in so far as they contain principles of law. They are also of use to show the way in which judges regard facts. In that

case they are only used as illustrations." (*Owners of Ship Swansea Vale* v. *Rice,* (1912) L. R. App. Cas. 238.) We will refer to a few of the cases which in our judgment contain similar facts or apply principles of law which are applicable here.

A ship's stoker while on duty in the tropics went to work in a coal bunker where the heat was intense. He was subsequently found outside the bunker in a fit, caused by cerebral hemorrhage resulting in apoplexy, but the medical men who examined him did not say that the hemorrhage resulted from the employment. The arbitrator found in favor of the employers, and it was held that the inference that the hemorrhage arose out of his employment was not, on the facts, so irresistible that the arbitrator was bound to draw it, though he would have been at liberty to do so. *Olson* v. *Owners of Steamship Dorset,* (1913) W. C. Rep. 604.

A workman, whilst tightening a nut with a spanner, fell back on his head and died. A post-mortem examination showed that there was a large aneurism in the aorta and that death was caused by a rupture of the aorta. The aneurism was in such an advanced condition that it might have burst while the man was asleep, and a very slight exertion or strain would have been sufficient to bring about a rupture. The trial judge found that the death was caused by a strain arising out of the ordinary work of the deceased operating upon a condition of body which was such as to render the strain fatal, and held that it was an accident within the meaning of the law. This decision was upheld both by the court of appeal and the House of Lords. *Hughes* v. *Clover, Clayton & Co.* (1909) 2 K. B. 798.

A bus driver was sitting on the box of his bus. A thud was heard, and he was found to have fallen from the box. There was no evidence as to how it happened. Conflicting medical evidence as to the cause of death was given, but as to the state of the man's heart it was agreed it was ab-

normal, and the trial judge stated that on the evidence he believed that the man had died from heart failure and not from the fall, and that the applicant, therefore, had not discharged the onus of proving that the cause of death was a personal injury by an accident arising out of and in the course of the deceased's employment. *Thackway* v. *Connelly & Sons,* 3 B. W. C. C. 37.

A collier died of apoplexy during working hours in a mine. The majority of the doctors said that his arteries were in a very diseased condition and that apoplexy might have come upon him when asleep in bed or when walking about or when over-exerting himself. The collier's work on that day was to build a "pack," but there was no evidence that the apoplexy came upon him when he was incurring a strain. It was held that as the evidence as to the cause of death was equally consistent with an accident and with no accident, the applicants had not discharged the onus of proof that was upon them. *Barnabas* v. *Bersham Colliery Co.* 3 B. W. C. C. 216.

An employee at an hotel was subject to a disease affecting his skin and making it abnormally sensitive. On the day he commenced work he washed up crockery for a number of hours in a tank containing hot water, soft soap and caustic soda. His hands became greatly inflamed, his nails came off and he was disabled for over four months. It was held that on these facts the trial court rightly awarded the recovery in his favor, (*Dotzauer* v. *Strand Palace Hotel,* 3 B. W. C. C. 387,) the opinion stating, among other things, on page 389, that "the principle which applies to all cases of this kind * * * that the workman in these cases carries a disability with him, and the mere circumstance that a particular man, in doing work arising out of and in the course of his employment, meets with an accident which a perfectly healthy man would not have met with is no answer at all. He takes his disability with him and it is none the less an accident on that account."

A workman, apparently in good health, died suddenly from heart failure while at work lifting baskets filled with corn. The arbitrator found that nothing unusual or unexpected occurred in the course of his work that afternoon until the sudden attack of illness; that the strain arising from the exertion made by the deceased in repeatedly lifting the baskets was a contributing cause of the heart failure and that death was due to an accident. The court of review reversed this finding. *Kerr* v. *Ritchies,* 6 B. W. C. C. 419.

A fireman, after having been for some time at work shoveling coal and raking fires in the stokehold of a steamship, had an apoplectic stroke. The medical evidence went to prove that the man was in a diseased condition and that such a stroke would be likely to be brought on by such exertion. The trial judge drew the inference that the injury was caused by accident within the meaning of the act. The court of review held that there was evidence to support the inference. *Broforst* v. *Owners of Steamship Blomfield,* 6 B. W. C. C. 613.

A seaman employed as a trimmer on board a steamship, whilst engaged in drawing ashes from the bottom of the ship's furnaces, had a heat-stroke and died therefrom about two hours afterwards. The seaman in question was in a poor state of health and of low vitality when he entered upon his duties and consequently liable to such an attack. The trial and reviewing courts held that it was an accident under the act and affirmed an award, (*Ismay, Imrie & Co.* v. *Williamson,* 1 B. W. C. C. 231,) the opinion in the reviewing court stating, among other things (p. 234) : "The weakness of the deceased which predisposed him to this form of attack is immaterial. The fact that a man who has died from a heat-stroke was by physical debility more likely than others so to suffer can have nothing to do with the question whether what befell him is to be regarded as an accident or not." (See, also, Honnold on Workmen's Comp. secs. 127, 128.)

A workman employed in unloading coal from a ship, who was required, in the course of his duty, to stand by the open hatchway through which the coal was being brought up from the hold, was seized with an epileptic fit whilst at work and fell into the hold and was seriously injured. The court held that regard must be had to the proximate cause of the accident resulting in the injury, which was to be found in the necessary proximity of the workman to the hatchway; that the accident arose out of as well as in the course of his employment and that he was entitled to compensation under the act; that it was the fall, and not the fit, which occasioned the accident, which was the effective, and so the proximate, cause of the injury. (*Wilkes* v. *Dowell & Co.* (1905) 21 T. L. R. 487.) Several cases there cited tend to uphold the conclusion reached in that case, the court saying, among other things (p. 488): "The man was found lying in the hold. The cause of his injuries was the fall. That fall was caused by the idiopathic condition of the man himself. It was precisely there that the principle upon which the insurance cases were founded came in. The injuries were caused by the fall, and, though the original cause of the fall was the fit, the fall itself was an accident. Then the only remaining question was, did the accident arise out of and in the course of the employment? When once one got rid of the confusion arising from the fact that the original cause of the fall was the fit, and the confusion that was involved in not dissevering the actual injury, and the cause thereof, from the more remote cause, namely, the fit, any difficulty arising from the words 'arising out of' the employment was removed. How did the accident come about? Because by the conditions of his employment the man was bound to stand upon a stage close to the opening into the hold. It was a part of his duty to stand on the edge of a precipice, and when he was seized with a fit he almost necessarily fell over that precipice. The injury resulted from the fall,

which was brought about by the necessity imposed upon him of working next to the opening into the hold. The accident, therefore, arose out of and in the course of the employment."

The facts and principles of law in that case are as nearly applicable to the facts and principles of law here as in any case that has been called to our attention. Even if the brain of the deceased, Pearce, was predisposed to apoplexy on account of the disease that Dr. Weil testified he thought affected him, it cannot reasonably be said, from the evidence in this record, that this disease would have caused his death at the time it did without the fall from the engine. We think it is clear, considering the case most favorably from the standpoint of plaintiff in error, that the conclusion necessarily follows that death was accelerated by the fall from the engine, and therefore the injury resulted from an accident. Indeed, the testimony of Dr. Weil relied upon by counsel for plaintiff in error, under the authorities cited, without in any way relying upon the testimony of Dr. Miller, brings this case within the act, because Dr. Weil testified that the fall would aggravate conditions and hasten death. He also testified that the exertion of shoveling would increase blood pressure and might have caused the rupture of the vessel. This conclusion is strengthened greatly by the testimony of Dr. Miller as to the cause of death. The Industrial Board was justified, on the evidence in this record, on principle and authority, in holding that the proximate cause of Pearce's death was the fall from the engine and not the disease. This inference from the facts proved was more reasonable than any other inference that can be fairly drawn therefrom. This being true, we are bound by the finding of the Industrial Board. The reasoning of this court in *Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board,* 276 Ill. 454, tends to support this conclusion.

Counsel for plaintiff in error cite and strongly rely upon several cases that they quote from at length, which, they contend, if followed, must reverse the finding of the lower court, among others, *Stone* v. *Fidelity and Casualty Co. of New York,* 182 S. W. Rep. (Tenn.), 252. The facts in that case and other cases cited by counsel are so very different from the facts in this case that in our judgment the conclusions reached therein are in no way applicable to the facts in this case.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*