Jennie McKugo, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Armour & Co., Defendant in Error.)

*Opinion filed April 21, 1928.*

1. Workmen's compensation—*that death resulted from accidental injury in course of employment may be proved by circumstances.* The burden is upon the applicant to prove that the death of the deceased resulted from an accidental injury arising out of and in the course of the employment, but such proof need not be by direct evidence, and evidence of circumstances from which an inference might reasonably be drawn which leads, on the whole, to a satisfactory conclusion is sufficient.

2. Same—*what evidence sufficient to prove accidental injury in course of employment.* Evidence that an employee was last seen entering a building in which a part of his duties were to be performed, that a few minutes thereafter his body was found between an elevator floor and the floor of the building which he entered, and that the door of the elevator shaft could have been opened by him in the course of his duties, is sufficient to warrant a finding that he was accidentally struck by the descending elevator as he opened the door, where there were bruises on his body warranting such finding and where the expert testimony is that death followed immediately from shock and injury due to external violence.

Writ of Error to the Circuit Court of Cook county; the Hon. Harry M. Fisher, Judge, presiding.

Thomas C. Angerstein, and George W. Angerstein, for plaintiff in error.

Mr. Justice Stone delivered the opinion of the court:

This cause is here on a writ of error awarded by this court to review the judgment of the circuit court of Cook county confirming the finding of the Industrial Commission that the injuries causing the death of John F. McKugo, son of plaintiff in error, did not arise out of and in the course of his employment. The arbitrator found that the injuries causing the death of the deceased did arise out of and in the course of his employment and that plaintiff in error was partially dependent upon him, and awarded compensation in the total sum of $1650, as provided in paragraph (d) of section 7 of the Workmen's Compensation act. The Industrial Commission, on the record made before the arbitrator, set aside the finding and award of the arbitrator. This action of the commission was confirmed by the circuit court.

The only question involved in the case is whether the injuries of which the deceased died, arose out of and in the course of his employment.

Defendant in error, Armour & Co., the employer, introduced no evidence and has filed no briefs or suggestions in this court. There being no dispute as to the evidence, the question is whether the record contains any evidence fairly tending to show that the injuries of the deceased arose out of and in the course of his employment.

John F. McKugo was twenty years of age. He was employed by defendant in error as an electrician's apprentice. He had been so employed for a period of about two years preceding September 10, 1925, the date of his death. His duties were to keep a check on the amount of electricity consumed by the different departments in defendant in error's business and report any over-consumption. This employment required that he go into all of the various depart-

ments and buildings of defendant in error. On September 10, 1925, he was seen returning to his work after the noon intermission. At that time he was going into the building in which the accident causing his death occurred. This was about 12:30 P. M. This building is known as the cold storage building. It has eight floors and a basement. An elevator ran from the basement to the top of the building. The door in the basement opening into the elevator shaft had handles on either side and could be opened from outside the shaft as well as from the elevator inside. The doors on other floors of the building could be opened only from inside the shaft. It is shown by the evidence that various persons going to and from their work in and about this building opened the basement elevator door when they desired to use the elevator. The witness Michael Burmis testified that the door was so constructed that it would close itself when released; that it was expected that it be not left open; that a little after 12:30 on the day of the accident he was descending in the elevator to the basement floor, with a truck on the elevator in charge of a colored man, and as he neared the basement floor the colored man shouted for him to stop; that he tried to stop the elevator but that it slipped down to within about a foot of the floor, and that he saw the deceased lying on the floor with his legs in the doorway of the elevator shaft—partly under the elevator; that he became frightened and sprang off the elevator and ran up to the floor above, shouting for help; that the deceased had come about an inch and a half too close to the elevator—evidently referring to the position in which the deceased was standing when the elevator came down. This witness testified that there was a light outside the elevator door, which was lighted. The door was open at the time of the injury. Joe Pletzki testified that he was working on the first floor above the basement and heard a commotion down in the elevator shaft; that he looked down and saw two men trying to raise the elevator, but they

could not; that he also saw the body of the deceased on the floor and that the elevator was on his legs. The evidence also shows that by the time the physician arrived there the young man was dead. The right side of his face and forehead was scratched and bruised. An autopsy disclosed that there was an abrasion on the right side of the face and forehead and a cut about an inch long on the outer side of the right leg. There was evidence of a hemorrhage under the scalp though no hemorrhage of the brain. The heart contained a large amount of "clotted" blood. It was the opinion of the physician conducting the autopsy that death was from shock and injury, due to external violence. The elevator shaft extended a few feet below the basement floor. In the bottom of the shaft was about two feet of water. The clothing of the deceased was dry, indicating that he had not stepped into the shaft.

The only conclusion that can be reached under the proof in this case as to the method of the death of McKugo is, that he was standing too near the elevator as it came down and was struck on the side of the head and knocked to the floor. The burden is upon the applicant to prove that the accidental injury causing the death of the deceased arose out of and in the course of the employment. Such proof, however, need not be by direct evidence. Evidence of circumstances from which an inference might reasonably be drawn which leads, on the whole, to a satisfactory conclusion is sufficient. (*Peoria Terminal Co.* v. *Industrial Board,* 279 Ill. 352; *Ohio Building Vault Co.* v. *Industrial Board,* 277 id. 96.) When last seen alive the deceased was occupied in his regular employment. It was within the course of his employment to go into the cold storage building and that he use the elevator in going from the basement to the various floors of that building. There is no circumstance in evidence from which the inference of self-destruction could arise. He was seen by the chief electrician for defendant in error about 12:30 P. M. on that day going into

the building in which the accident occurred. A few minutes after 12:30 P. M. he was found on the floor, with his legs under the elevator. We are of the opinion that the only reasonable inference that can be drawn from the evidence is that he was struck by the elevator and knocked down, probably after having looked into the shaft to determine the location of the elevator. As we view the evidence, no other inference is compatible therewith. The commission therefore erred in finding that the injury causing the death of McKugo did not arise out of his employment, and the circuit court likewise erred in confirming this finding of the commission.

As no question is made of the partial dependency of plaintiff in error or the amount awarded by the arbitrator, these matters must be taken as having been correctly decided by him.

The judgment of the circuit court is therefore reversed and the cause remanded to that court, with directions to set aside the finding of the commission and confirm the award of the arbitrator.

*Reversed and remanded, with directions.*