(No. 23447.—

ELLEN ERVIN *et al.* Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE SOUTHERN ILLINOIS TIMBER COMPANY, Defendant in Error.)

*Opinion filed June 10, 1936—Rehearing denied October 7, 1936.*

John R. Dean, Leon A. Colp, and Andrew B. Dennis, for plaintiff in error.

Ferrell & Hay, and Stone & Fowler, for defendant in error.

Mr. Chief Justice Herrick delivered the opinion of the court:

This court granted a writ of error to review the judgment of the circuit court of Williamson county denying compensation to the widow and minor child of Raymond Ervin, deceased, for injuries received by him alleged to have caused his death while in the employ of the defendant in error, the Southern Illinois Timber Company.

The respondent, defendant in error here, operated a sawmill at the intersection of State highway 149 with another public highway near Royalton, Illinois. The plant consisted of the mill, with the usual machinery, tractor and

a small shanty, all in close proximity to, and about 200 feet from, the paved road. The deceased had worked about four or five months immediately prior to his death as an "off-bearer" for the respondent and during the same period worked at night for the respondent as watchman at the mill. His duties required him to guard the property and see that nothing was carried away. A cot was provided in the shack in which he could sleep a portion of the time. He lived with his uncle, about one-quarter of a mile from the mill. So far as the record shows, the only sickness from which the deceased ever suffered was an illness in the nature of a fever when he was a small child, which as an after-effect had caused an impediment in his speech. On September 27, 1934, the deceased had worked at the mill all day, had eaten his evening meal at his uncle's and returned to the sawmill to assume his position as night watchman. No light or heat was provided at the mill. The evening in question was damp, chilly and foggy, and Ervin built a fire on the ground close to the shanty. He had occasionally on previous evenings had a small fire burning on the premises, which fact was known to the respondent's foreman. So far as the record discloses, no one saw the deceased from the time he left his uncle's until about 10:00 o'clock that night. At about that time George Stafko, who had been at the uncle's home, was returning on foot to his own home at Royalton. As he walked along the highway in the neighborhood of the sawmill he heard cries coming from that vicinity. As he drew closer he recognized them as cries for help. He immediately ran to the mill and found Ervin lying in the fire, on his back. Ervin asked him to take him off the fire; Stafko did and propped him against some timbers near by while Stafko went for help. He and Ervin's uncle returned to the scene within a short time and found the watchman still lying against the timbers, as he was when Stafko left. Ervin could move his head and neck, his eyes were open and he could talk but was unable

to walk. His arms hung limp. His legs were rigid and bent. Dr. Tweady, of Royalton, soon arrived at the scene. The injured man was removed in the physician's car to the hospital. He could not sit in the car due to the stiffness of his lower limbs and he was semi-conscious. The burns were quite deep, being classified as second and third degree, and extended from the hip line on the anterior portion of the body to below the knees. Ervin died about 1:00 o'clock the next day from the effect of the burns. His minor child was then ten years old.

A petition for compensation was filed by the widow with the Industrial Commission on October 19. On the hearing the arbitrator found the deceased sustained accidental injuries which arose out of and in the course of his employment on September 27, 1934, from which he died the next day, and entered an award in favor of the petitioner for $3000, the amount of compensation, if any, to which she was entitled under the provisions of the Compensation act. On the petition of the respondent for review the Industrial Commission set aside the decision of the arbitrator and found, amongst other things, "that the said Raymond Ervin did not sustain accidental injuries on the 27th day of September, 1934, and therefore the petitioner cannot recover compensation." For that reason, and none other, the petitioner was denied compensation. On writ of *certiorari* from the circuit court of Williamson county granted at the instance of the petitioner the circuit court upheld the decision of the Industrial Commission. That judgment is brought here by the widow for review.

No evidence was offered by the respondent and there is no conflict in that offered by the petitioners, plaintiffs in error here. The sole issue for decision is whether the deceased sustained accidental injuries which arose out of and in the course of his employment. That he was injured and that such injuries were the proximate cause of his death were clearly proved.

It is earnestly insisted by respondent that the injuries were neither accidental nor did they arise out of and in the course of the employment of the deceased. In deciding the issue presented it is well to remember that the Workmen's Compensation act is a radical departure from the pre-existing laws applicable to the liability of the master for an injury received by the servant arising out of and in the course of his employment or for death resulting through the negligence of the master during such employment. The former legal doctrines of assumed risk, negligence of fellow-servant, contributory negligence and negligence of the master were severally rejected in the application of the new statute. The law was adopted as a result of the more modern thought that the workman, alone, should not bear the burden of his injury but that industry should contribute its part in carrying a portion of the financial loss sustained by the workman or his dependents through his injury or death. The statute is to be liberally construed. With these thoughts we approach the determination of the issue presented.

The legislature in adopting the act did not undertake to define the term "accident" or the phrase "arising out of and in the course of his employment" but left the interpretation thereof to the courts. The word "accidental," as used in the act, is a comprehensive term almost without boundaries in meaning as related to some untoward event. So far as our search reveals, no court has attempted to circumscribe the meaning of the word "accident" as applied to different combinations of circumstances resulting in traumatic injuries to an individual although many definitions have been ascribed thereto. This court said in *Arquin* v. *Industrial Com.* 349 Ill. 220, 223: "The words 'accident' and 'accidental injury' as used in the Compensation act are not technical, legal terms. Things which happen in the course of the employment unexpectedly and without the affirmative act or design of the employee, resulting

in injury to him, may safely be said to cause accidental injury. (*Peru Plow Co.* v. *Industrial Com.* 311 Ill. 216.) An 'accident' has been defined by the English courts in compensation cases as 'any unexpected personal injury resulting to the workman in the course of his employment from any unlooked-for mishap or occurrence arising out of the employment.'—*Fenton* v. *Thorley & Co.* 5 B. W. C. C. 1." Many decisions of this court and other courts of review of foreign jurisdictions support this meaning of the word "accident" as used in the Compensation act. "The words 'arising out of' and the words 'in the course of' are used conjunctively. * * * The words 'arising out of' refer to the origin or cause of the accident and are descriptive of its character, while the words 'in the course of' refer to the time, place and circumstances under which the accident takes place."—*Mueller Construction Co.* v. *Industrial Board,* 283 Ill. 148, 152. See, also, *Arquin* v. *Industrial Com. supra;* Angerstein on Workmen's Compensation, p. 163.

It was clearly contemplated by the respondent that the deceased, in the discharge of his duties, not only would sleep in but also spend a portion of his time in the shanty on the premises. No stove or other means for maintaining warmth in cold or inclement weather were furnished in this building, but the deceased, with the knowledge and consent of the respondent, maintained a fire close to such structure, with the apparent hope of obtaining some degree of comfort against the rigors of climatic conditions while on duty.

It is true, as urged by the respondent, that the burden was on the petitioners to prove the injury to the deceased. While there were no eye-witnesses as to the manner in which the deceased got in the fire, the question is no longer debatable in this State that proof of accidental injuries is not necessary to be made by the testimony of eye-witnesses to the accident. Such fact may be established by circum-

stantial evidence. (*McKugo* v. *Industrial Com.* 330 Ill. 70; *Reed & Co.* v. *Industrial Com.* 328 id. 345; *Vulcan Detinning Co.* v. *Industrial Com.* 295 id. 141; *Sparks Milling Co.* v. *Industrial Com.* 293 id. 350; *Stephens Engineering Co.* v. *Industrial Com.* 290 id. 88.) If from the facts proved the inference can logically be drawn as to how the injury was occasioned and that it arose out of and in the course of the employment, such prerequisites are sufficiently proved. *Vulcan Detinning Co.* v. *Industrial Com. supra; Rockford Hotel Co.* v. *Industrial Com.* 300 Ill. 87; *McKugo* v. *Industrial Com. supra; Georgetown College* v. *Stone,* 59 Fed. (2d) 875; *In re Dow's case,* 121 N. E. (Mass.) 19.

The respondent urges there is no evidence that the deceased fell into the fire and to find so is mere conjecture. The evidence does show that the deceased was, and had been for a long time, in good health at and immediately prior to the occurrence in question. There was no evidence of any assault upon the deceased or of any suicidal tendencies on his part. The presumption is against suicide. (*Wilkinson* v. *Ætna Life Ins. Co.* 240 Ill. 205; *Sparks Milling Co.* v. *Industrial Com. supra.*) In the absence of evidence tending to rebut such presumption, the presumption must prevail.

The fact that the deceased built the fire in which he was later burned is no defense to this proceeding. He had the legal right, in the absence of other facilities furnished him for that purpose, to build the fire for his own health and comfort even though such act was personal to him. The building and maintenance of the fire were incident to his employment. (*Steel Sales Corp.* v. *Industrial Com.* 293 Ill. 435.) All of the attributes of an accident were here present. The effect was immediate, unexpected, extraordinary, unpremeditated, involuntary and undesigned. (*Baggott Co.* v. *Industrial Com.* 290 Ill. 530.) It happened as a result of a combination of circumstances, the

consequences of which were unforeseen and unanticipated by the employee, but the result was catastrophic. The record as made establishes the causative danger was incidental to the employer's business, originating in a hazard of the employment and a rational consequence arising therefrom. (*VanWatermeullen* v. *Industrial Com.* 343 Ill. 73; *Rockford Hotel Co.* v. *Industrial Com. supra; Mueller Construction Co.* v. *Industrial Com. supra; Vulcan Detinning Co.* v. *Industrial Com. supra.*) The mere recital of the facts causes the normal mind immediately to reach the conclusion that the deceased fell into the fire, just as the conclusion was readily attained in *Rockford Hotel Co.* v. *Industrial Com. supra,* where there was no eye-witness but the deceased was found in the ash-pit, severely burned. It follows that the accident in which the employee was injured arose out of and in the course of his employment.

It is urged by the respondent that if we conjecture on how the deceased got into the fire the evidence tends to support, more than any other, the theory that the deceased suffered a paralytic stroke, which caused his fall into the fire. If we should deduce that fact from the circumstances established by the record it would not assist the respondent. The burns received by the decedent while on or in the fire were the controlling factor resulting in the decedent's death and the proximate cause of it. Even though the idiopathic condition of the employee may be a remote cause of his receiving traumatic injuries, nevertheless such remote cause does not remove the occurrence from the field of the accident but it is properly classified as such. (*Peoria Railway Terminal Co.* v. *Industrial Board,* 279 Ill. 352; *Rockford Hotel Co.* v. *Industrial Com. supra; Vulcan Detinning Co.* v. *Industrial Com. supra; In re Dow's case, supra; Connelly* v. *Samaritan Hospital,* 259 N. Y. 137, 181 N. E. 76; *Industrial Com.* v. *Nelson,* 186 N. E. (Ohio) 735; *Georgetown College* v. *Stone, supra.*) No logical conclusion can be reached by the record other than that the deceased fell

into the fire. Whether some physical ailment brought about the fall is wholly immaterial. Neither was the risk of the fire common to the neighborhood. (*Connelly* v. *Samaritan Hospital, supra.*) The fire was a hazard only to those employees rightfully on the premises in the discharge of their duties.

The respondent urges that this court is bound by the decision of the Industrial Commission if there is any legal evidence to support it. The rule does not go to the extent stated. The rule is, we are bound by the findings of fact of the Industrial Commission unless such findings are against the manifest weight of the evidence. (*Plano Foundry Co.* v. *Industrial Com.* 356 Ill. 186, 199.) The facts here are not in controversy. The issue as to whether the deceased received injuries which arose out of and in the course of his employment becomes, from the facts stipulated and proved, a question of law. It would scarcely be contended that any question of law decided by the Industrial Commission is binding upon this court.

Counsel for the respondent cite many cases upon which they strongly rely and from which they have quoted liberally in their answer to the petition for writ of error as sustaining the decision of the circuit court. Each of the cases has been carefully reviewed. The facts in those cases differ so materially from the facts here that they are not persuasive of the correctness of the judgment rendered.

The judgment of the circuit court of Williamson county is reversed and the cause remanded to that court, with directions to set aside the findings of the Industrial Commission and to enter an appropriate judgment for the petitioner.

*Reversed and remanded with directions.*