ROBERT L. OLDHAM, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (St. Joseph Hospital, Defendants-Appellants).

Second District (Industrial Commission Division)   No. 2—85—0280WC

Opinion filed December 26, 1985.

Howard W. Phillips, of Kane, Doy & Harrington, Ltd., of Chicago, for appellant.

Richard W. Husted, of Dundee, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
The sole issue before us is whether the decision of the Industrial Commission denying compensation on the basis that decedent's injuries and subsequent death did not arise out of and in the course of

her employment was contrary to the manifest weight of the evidence.

Isabelle Oldham's widower, Robert L. Oldham, filed a claim for death benefits against his wife's former employer, St. Joseph Hospital. The claim arose out of fatal injuries suffered by decedent when she fell while at work. An arbitrator denied compensation to the claimant, and the Commission affirmed the arbitrator's decision. The circuit court of Kane County found that the fatal injuries arose out of and in the course of decedent's employment, and reversed the Commission's decision. The employer appeals.

The decedent worked in the kitchen at St. Joseph Hospital. On January 22, 1980, she began working in the food line at about 7:15 a.m. She was operating the hot pellet machine. This machine heats metal pellets or discs which are heated to 400 degrees fahrenheit. The pellets are then placed in a depression in the food trays to keep the food hot. At about 8 a.m., the decedent told the relief person, Penny Frederickson, that she did not feel well and wished to be relieved. Frederickson told the decedent that she would be relieved in a few seconds, after Frederickson placed four pierces of toast into the toaster. Before she relieved decedent, Frederickson noticed her walking away from her station, in the direction of the starter station. Frederickson then heard, but did not see, decedent fall.

The breakfast cook, Lawrence Gray, Jr., testified that he witnessed decedent's fall. He first saw decedent talking to Frederickson. A "few minutes" later, Gray saw decedent walk away from her station, then suddenly go "rigid like a board" and fall backwards, "toppling over" and striking her head on the clay tile floor.

No evidence was introduced that decedent slipped or that the floor was anything other than clean and dry. Several co-workers testified that there was no water or debris on the floor at the time decedent fell.

Dr. A. Beaumont Johnson II was the attending neurosurgeon who performed brain surgery on decedent. Dr. Johnson testified that decedent was unable to give rational answers when he examined her. Dr. Johnson obtained a history from the attending physician and from decedent's daughter, Roberta Gomez. Dr. Johnson was told that decedent was a diabetic who had not taken her insulin that morning; had told co-workers she did not fell well; and had fallen backwards, striking her head on the floor. Tests showed hemorrhaging and swelling of the left side of the brain. Tests also showed that decedent's blood sugar level was within normal ranges. Dr. Johnson performed surgery to relieve pressure within the skull. Decedent did not regain consciousness, and died on January 30, 1980.

Dr. Johnson testified that, based upon the history he received, his treatment, and his participation in the *post mortem* examination, he believed decedent had suffered a syncope attack with an unknown etiology. He explained that this meant she suffered from a faint or transient loss of consciousness for unknown reasons.

Claimant testified that he saw decedent give herself an insulin shot the morning of the accident. Decedent's daughter and son-in-law testified that they rode to work with decedent on the morning of the accident and that she appeared well and did not act unusual.

■■ Claimant successfully argued in the trial court that the issue of whether an accident arose out of the employment is a question of law and that therefore the court was not bound by the decision of the Commission. A question of law arises only where no factual matters are disputed or where no conflicting inferences can be drawn from the facts. (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 362 N.E.2d 325.) In the present case, however, conflicting inferences regarding the cause of the fall do exist. And the Commission may draw inferences from undisputed facts to determine whether an injury arose out of employment or whether the employment increased the risks of injury. (*Sears, Roebuck & Co. v. Industrial Com.* (1979), 78 Ill. 2d 231, 399 N.E.2d 594.) Such inferences will not be disturbed unless they are against the manifest weight of the evidence. 78 Ill. 2d 231, 399 N.E.2d 594.

■■ To demonstrate that decedent's injuries arose out of her employment, there must be a showing that the injury was due to a cause connected to the employment. (*Williams v. Industrial Com.* (1967), 38 Ill. 2d 593, 232 N.E.2d 744.) We must first ask whether the cause of the fall was internal or external to the decedent. If the cause of the fall was internal, we must then ask whether the employment significantly contributed to the injury by placing the employee in a position increasing the dangerous effects of the fall. *Ervin v. Industrial Com.* (1936), 364 Ill. 56, 4 N.E.2d 22.

The employer contends that the accident did not arise out of decedent's employment because the fall was idiopathic in nature, while claimant counters that the fall was unexplained. An idiopathic fall results from an internal, personal origin, while an unexplained fall results from a neutral origin. (*Prince v. Industrial Com.* (1959), 15 Ill. 2d 607, 155 N.E.2d 552; *Chicago Tribune Co. v. Industrial Com.* (1985), 136 Ill. App. 3d 260; 1 Larson, The Law of Workmen's Compensation sec. 12.11, at 3—314 (1985).) Illinois denies compensation for idiopathic falls (*Williams v. Industrial Com.* (1967), 38 Ill. 2d 593, 232 N.E.2d 744), but awards compensation for unexplained falls. *Chi-*

*cago Tribune Co. v. Industrial Com.* (1985), 136 Ill. App. 3d 260.

Although claimant argues that the manner in which decedent fell indicates it was not a normal, wilting fall forward that typifies a faint, the medical testimony reveals that decedent suffered a syncope attack. While the reason for the syncope is unknown, the reason for the fall was the syncope itself. Consequently, the Commission had sufficient basis for drawing an inference that the fall was idiopathic in nature resulting from an internal origin, and thus not compensable.

■ Claimant contends further, however, that the employment increased the risk of injury because, although decedent felt ill and requested a substitute, she was required to remain working until relief arrived. Claimant urges that if she had not been working she would not have remained active while ill, and thus would not have fallen. The trial court agreed with claimant, stating that decedent was subjected to an increased risk because she was required to remain standing at the work station while she was ill.

Compensation can be awarded for an idiopathic fall when the employment significantly increases the danger of the fall. (*Ervin v. Industrial Com.* (1936), 364 Ill. 56, 4 N.E.2d 22.) The act of standing itself, however, does not establish a risk greater than those faced outside of work. It is impossible to speculate whether decedent would have been standing, sitting, driving, walking, or resting in bed if she had not been working. The need to stand was not unique to decedent's work. In addition, two witnesses testified, and the Commission so found, that decedent was walking away from her station without having been relieved when the attack occurred. The Commission might reasonably have inferred, therefore, that she did not remain at her station while ill.

Moreover, a clay tile floor does not constitute a heightened risk. In *Prince v. Industrial Com.* (1959), 15 Ill. 2d 607, 155 N.E.2d 552, the employee suffered an epileptic seizure, fell and struck his head on a concrete floor. He later died as a result of a fractured skull. The court held that the concrete floor presented no risk not encountered by the general public and was not unique to the employment. Similarly, in the present case, decedent fell on a floor that presented no danger unique to her employment.

The holding in *Ervin v. Industrial Com.* (1936), 364 Ill. 56, 4 N.E.2d 22, is distinguishable from the present case. There, a night watchman suffered fatal injuries when he fell into the fire which he was allowed to build at work for his own comfort. Although the court found the fall to be idiopathic, the fact that he was near the fire at work increased the risk of suffering fatal injuries from a fall, and ren-

dered the claim compensable. Here, unlike the fire in *Ervin*, the level, clean, dry floor presented no unique risks.

We find, therefore, that the Commission's decision that decedent's fall was idiopathic and not compensable was not against the manifest weight of the evidence. There was no evidence in the record justifying the reversal of the Commission's award by the trial court.

For the reasons stated, the judgment of the circuit court of Kane County is vacated and the decision of the Commission is confirmed.

*Judgment vacated; decision of Commission confirmed.*

WEBBER, P.J., and LINDBERG, BARRY and KASSERMAN, JJ., concur.