CHICAGO TRIBUNE COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Frankie Jenkins, Defendant-Appellee).

First District (Industrial Commission Division)   No. 1—84—1484WC

Opinion filed August 28, 1985.

Thomas D. Nyhan and Harry E. Kinzie, both of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, for appellant.

Gordon & Gordon, Ltd., of Chicago (Robert E. Gordon, of counsel), for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Claimant, Frankie Jenkins, filed her application for adjustment of claim against her employer, respondent Chicago Tribune Company. The claim arose out of a slip and fall on respondent's premises. The arbitrator awarded permanent partial disability to the extent of 8%, temporary total disability, and medical expenses. Both parties appealed to the Industrial Commission. In a split decision the Commission affirmed the permanent partial disability but reduced it to 5%, and reversed the award of temporary total disability and medical expenses. Respondent appealed to the circuit court of Cook County. That court affirmed the permanent partial disability of 5%, but reversed the Commission and reinstated the arbitrator's award of temporary total disability and medical expenses.

Respondent has appealed, claiming that the injury did not arise out of and in the course of employment; or in the alternative, that the circuit court's reinstatement of temporary total disability and medical expenses was erroneous. The permanent partial disability award has not been appealed. We affirm the circuit court's order, thus affirming in part and reversing in part the order of the Commission.

Claimant was employed by respondent as a data control clerk and worked on the eighth floor of what was called the Nathan Hale Building, a part of the Tribune complex of buildings on North Michigan Avenue in Chicago. On the morning of February 5, 1979, the date of the accident, claimant entered the premises on her way to work through the lobby of the tower building, passed through a doorway into what was called the "Nathan Hale Gallery." Shortly after entering this gallery she slipped and fell at the bottom of a ramp.

Only three witnesses appeared at the arbitration hearing: the claimant and two security guards who worked for respondent at the time of the accident. Claimant testified that after she entered the gallery her left foot went straight out in front of her and she fell backwards, in the process striking her head on a ledge which ran along the wall of the gallery. She fell flat on the floor and was unconscious for a short period of time. The floor was of linoleum, and claimant did not recall whether it was wet or dry. She stated she did not know what caused her to fall, but she did not faint nor trip over her feet.

The gallery was used by Tribune employees and the public. A coffee shop and other stores open to the public were located in the gallery.

After she fell claimant stated that she felt pain and numbness throughout her body. She remained in the floor until a nurse from the medical department of respondent arrived with a wheelchair and transported her to the medical department, where she received some treatment and returned to work. About 4 p.m. she received permission to leave because of pain and stiffness in her lower back, shoulders, and neck.

Claimant testified that two days after the accident, February 7, 1979, she consulted with Dr. Aquino and continued to see him once a week for three weeks following the initial consultation. He took X rays and prescribed muscle relaxants and bed rest. She also testified that she was examined by Drs. Busch and Hirshfield on April 24, 1979, and December 16, 1980.

Claimant returned to work on February 26, but remained only two hours. She asked permission to go home; a doctor in respondent's medical department refused, but she left anyway.

Thereafter, beginning on March 9, 1979, she consulted with Dr. Thomas, a chiropractor. She continued seeing him·three times per week for 15-minute therapy sessions, which consisted of heat and massage. This continued until November 14, 1979, for which Thomas presented a bill of $2,195.

Claimant returned to work for respondent on April 16, 1979, and continued to work until June 4, 1979, when she was dismissed for tardiness. At the time of the arbitration hearing in May 1981 she claimed she was still experiencing pain and stiffness in her legs and hips and lower back. She used muscle relaxants, aspirin, and rest, all of which eased the pain.

Two security officers employed by respondent on the day of the accident also testified. Michael Abston stated that he observed claimant fall and went to her assistance, that the floor was level and clear of debris, and that there was no ice, snow, nor water on the floor. He also stated that he could not recall the weather conditions on that morning, but when it was snowy and wet outside, people would track the snow and water in and onto the floor. He recalled that the claimant was wearing shoes with narrow heels about 2 or 3 inches high.

Charles Stastny, another security officer, also testified that he recalled claimant's high heels.

At the arbitration hearing both parties introduced medical reports which were in conflict; the same condition existed at the review hearing before the Commission. The conflict rested in the extent of claimant's injuries and the degree of her permanent disability, if any.

■■ Respondent's first issue is that the accident did not arise out of and in the course of employment and hence no compensation of any kind is due. It argues that claimant's fall was "unexplained or idiopathic in nature." These terms have been largely confused in the reported cases which lump them together even though they represent two different types of fall leading to quite different results. An "idiopathic" fall is one resulting from some morbid condition existing in the claimant; an "unexplained" fall is one with no such prior condition existing. The distinction is well summed up by Professor Larson:

> "It should be stressed that the present question [internal weakness causing fall], although often discussed in the same breath with unexplained falls, is basically different, since unexplained-fall cases begin with a completely neutral origin of the mishap, while idiopathic fall cases begin with an origin which is admittedly personal and which therefore requires some affirmative employment contribution to offset the prima facie showing of personal origin." (1 A. Larson, Law of Workmen's Compen-

sation sec. 12.11, at 3—314 (1984).)

Our supreme court has followed this rule in a constellation of cases dating back 35 years. In *Prince v. Industrial Com.* (1959), 15 Ill. 2d 607, 155 N.E.2d 552, the court affirmed the denial of an award, finding that the fall was occasioned by a blackout spell, which the court called a "pre-existing idiopathic condition." 15 Ill. 2d 607, 609, 155 N.E.2d 552.

In *Electro-Motive Division, General Motors Corp. v. Industrial Com.* (1962), 25 Ill. 2d 467, 185 N.E.2d 224, an award by the Commission was reversed by the court upon a finding that the fall was caused by a blackout spell. In *Williams v. Industrial Com.* (1967), 38 Ill. 2d 593, 232 N.E.2d 744, an award by the Commission was reversed by the circuit court, which was affirmed by the supreme court, calling the fall idiopathic when the claimant choked on a donut and blacked out. The more recent case of *Sears, Roebuck & Co. v. Industrial Com.* (1980), 78 Ill. 2d 231, 399 N.E.2d 594, affirmed an award for an unexplained fall. The decedent was found lying next to a forklift truck on the employer's premises. He had a fractured skull and died therefrom. There was no explanation for the fall. The court held that in case of unexplained falls it is the province of the Commission to draw inferences from the facts.

The instant case is controlled by *Sears*. There was no evidence of any physical condition existing in the claimant which could have caused the fall. On the contrary, she testified that she did not faint and did not know what caused the fall. She knew only that she slipped and fell backwards. If the fall were idiopathic, it would be more likely that the claimant would have stumbled forward and fallen. Further, from the evidence the Commission could have drawn the inference that there might have been ice and water on the floor, although this was denied by the security officer.

Respondent argues that since the fall occurred in a gallery open to the public, the risk was one common to the public and therefore did not arise out of claimant's employment. It is difficult to see how the respondent can escape liability by exposing the public to the same risks encountered by its employees. The short answer is that claimant was required to be in the area in order to get to her work station. No such onus lay upon the public.

This was clearly a case of an unexplained fall on the respondent's premises. It therefore arose out of and in the course of claimant's employment. *Sears, Roebuck & Co. v. Industrial Com.* (1980), 78 Ill. 2d 231, 399 N.E.2d 594.

We turn next to respondent's alternative claims that the award of

temporary total disability and medical expenses is against the manifest weight of the evidence.

At the arbitration hearing claimant presented letter reports from Drs. Busch and Hirshfield, dated April 24, 1979, and December 16, 1980. In essence these documents stated that claimant suffered from post-traumatic cephalalgia, contusion and strain injury to the muscles in her neck and thoracic areas, myositis, impaired motility in the region, bilateral lumbosacral strain, and bilateral sciatica. Respondent introduced counter letter reports from Drs. Cooper and Zurfli, dated March 9, 1979, and April 14, 1980. These stated that claimant had fully recovered from any soft tissue injury with no clinical evidence of a neurological deficit.

The same situation existed at the review hearing before the Commission. Claimant presented a letter report from Dr. Hirshfield, dated December 7, 1981, indicating that some injury existed. Respondent presented a counter letter report from Dr. Marquardt, dated December 15, 1981, indicating that only subjective complaints existed without any objective findings.

■ It is fundamental that a claimant seeking temporary total disability benefits has the burden of proving by a preponderance of the evidence both that she did not work and was unable to work during the period in question. (*Arbuckle v. Industrial Com.* (1965), 32 Ill. 2d 581, 207 N.E.2d 456.) It is undisputed that the claimant in the instant case did not work from February 5, 1979, to April 16, 1979, a period of precisely 10 weeks, for which the arbitrator awarded temporary total disability.

The issue of inability to work poses a more difficult question. Claimant was treated by Drs. Aquino and Thomas during the 10-week period, yet no report nor testimony was offered from either of them. All of claimant's medical reports and records, both at arbitration and review, were dated after the termination of the 10-week period. Nevertheless, we are of the opinion that all of the evidence taken together preponderates in her favor.

■ First of all, it defies logic to hold, as the Commission did, that there is a permanent disability without some prior temporary disability as a predicate therefor. The medical reports introduced at arbitration all indicate that there was an injury. The only difference is that the reports of Drs. Cooper and Zurfli indicate that claimant had recovered from it. The reports appear to be aimed principally at the question of permanent disability, but they are unanimous in holding that an injury did in fact exist. The obvious inference is that claimant was suffering from this injury during the 10-week period.

We also note that respondent itself paid claimant 2⁶/₇ weeks of temporary compensation to the date of February 26, 1979. It follows that the argument is not over principle but over degree and extent; in other words, 2⁶/₇ weeks versus 10 weeks. This leads only to the conflict in medical testimony: Drs. Busch and Hirshfield finding the symptoms described above on April 24 and Dr. Zirfli finding them on March 9, but cured. When there is added to this mix the claimant's testimony that Dr. Aquino released her to return to work on April 11 (and she did so on April 16), the evidence preponderates in favor of the 10-week period found by the arbitrator. The circuit court was correct in reversing the Commission on this matter.

■ The issue of Dr. Thomas' bill is similarly flawed to some extent by the failure to call him or to present other evidence that the treatment was necessary and the charges reasonable. However, we observe that the respondent objected to the bill only on the basis of liability, not on reasonableness. Having decided the question of liability adversely to respondent, it follows that reasonableness is not an issue and liability carries with it the issue of necessity. It also follows that the Commission's finding of permanent disability dictates some need for medical services. The trial court was also correct in its holding on this question.

We would not be understood as holding that in every case the claimant's own uncorroborated testimony as to inability to work and the necessity and reasonableness of medical services is sufficient. Indeed, corroboration is always necessary, but it can be found in the proper case in all the facts and circumstances, including reasonable inferences therefrom. That is the instant case. Corroboration to such an extent as to defeat the purposes of the Workers' Compensation Act should not be required.

For all the foregoing reasons, the order of the circuit court of Cook County, affirming in part and reversing in part the order of the Commission, is affirmed.

Affirmed.

SULLIVAN, LINDBERG, BARRY and KASSERMAN, JJ., concur.