DAVID H. HATFILL, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Baldwin Associates, Appellee).

Fourth District (Industrial Commission Division)   No. 4—89—0994WC

Opinion filed August 29, 1990.—Rehearing denied October 3, 1990.

Michael K. Brandow, of Smith, Waters, Kuehn & Hughes, Ltd., of Peoria, for appellant.

Dennis S. O'Brien, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Claimant, David H. Hatfill, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) for an injury which occurred when he jumped over an accumulation of water at the base of an incline on his way to his car in the respondent's, Baldwin Associates', parking lot as he was leaving work for the day. The arbitrator found that the claimant failed to prove that his injuries arose out of and in the course of his

employment and denied the claimant benefits. On review, the arbitrator's decision was affirmed by the Industrial Commission (Commission), and the Commission's decision was confirmed by the circuit court. The claimant appeals. The sole issue before this court is whether the Industrial Commission's determination that the claimant's injuries did not arise out of and in the course of his employment was against the manifest weight of the evidence.

At the hearing before the arbitrator, the claimant testified that he was working as an auditor for the respondent on Saturday, November 3, 1984. On that date, he had worked overtime, and at the end of his work day, he left the office, accompanied by Anita Brady, the woman with whom he car-pooled. The claimant and Brady left the office and proceeded straight across the respondent's parking lot to Brady's car, which was parked in the upper level of the parking lot. To get to the car, the claimant jumped across some water which had accumulated at the base of the five-foot incline going to the upper level parking area, and upon landing, he injured his right leg and lower back. After the claimant jumped, Brady also jumped across the water with the help of the claimant, and they proceeded to Brady's car. When the claimant attempted to put his right leg in the car, it would not come up all the way, and he had to lift his leg into the car. The claimant stated that he had jumped the ditch in the parking lot in the past, just as others had done.

The claimant went home, and on Monday, when he returned to work, he went to the respondent's first-aid station as his back hurt. He reported to the respondent that he had jumped the ditch when he left work on Saturday, and when he did so, he twisted his leg or back when he landed, immediately causing him pain in his groin area.

The claimant testified that he had never received any workers' compensation benefits from the respondent for his injuries and that he had received a letter from the respondent's insurance carrier in which it was stated that his claim was refused because his actions had been a safety violation. According to the claimant, he had not been told by the respondent before this incident that jumping the ditch was a safety violation. Likewise, the claimant was unaware of anything in the employee's handbook which stated that jumping the ditch was a safety violation. To the claimant's knowledge, he had never been formally written up for a safety violation for jumping the ditch, and he had not been told that this practice was not allowed. Since the claimant's accident, he has observed 10 to 15 persons a day jumping the ditch.

On cross-examination, the claimant admitted that when he started

work with the respondent in 1981, he had had an orientation meeting and was given a "blue book" by the respondent. Additionally, the respondent held a safety program every six months. The claimant recalled that the respondent had a rule which prohibited running on the work site; however, the claimant denied that he had run before he jumped the ditch.

The claimant acknowledged that there was a walkway to the upper level parking lot approximately 50 feet north of where he jumped the ditch. Likewise, a roadway approximately 50 feet south of the accident site ran around the parking lot and provided another walkway to this parking area.

When asked about his activities following his accident, the claimant initially responded that he had lain around that Saturday night and then went to bed. He stated on Sunday that he did not do much, but his leg and back did not bother him. Subsequently, the claimant admitted that he went to a party on Saturday night, and when he came out of the party, two of his tires had been slashed and he had had to change them, which he did with the help of another person. The claimant also admitted that he had hung six storm windows on Sunday.

The claimant went to work on Monday morning, and after the morning, his leg and back started to hurt, and he had difficulty walking. Therefore, he went to the respondent's first-aid station and reported it. There, he told Helen Polley that his back was hurting. The claimant testified that he had forgotten that he had hurt himself at work on that Saturday, and he did not remember telling Helen that he had not hurt his back at work. The claimant admitted that he subsequently talked to Brady about hurting himself, and they determined that he must have been injured when he jumped over the ditch. The claimant also testified to the medical treatment he had received for his leg and back and to the extent of his injuries. However, since there is no issue concerning this evidence, that testimony need not be reiterated here.

Anita Brady testified that she drove the claimant to work on November 3, 1984, and that she had parked on the upper level of the respondent's parking lot. Because she and the claimant worked together, they left the office at the same time. On the day of the claimant's accident, Brady and the claimant came out to the parking lot, and they proceeded directly across the lot to her car, since she was parked straight out from the guard shack. When they got to the ditch, the claimant jumped over. Upon landing, the claimant held the inside of his leg and said that he had hurt something. Brady jumped

over the ditch, and the claimant held her hand to help her across. Brady noted that the claimant limped as he walked to her car. On the ride home, the claimant complained of pain in his groin area, down his leg, and through his back.

Brady also testified that she discussed the claimant's injury with him on Monday. She also talked to the safety officer about the accident. Brady accompanied the safety officer to the place where the accident occurred, and the safety officer took photographs of the area.

Helen Polley, the secretary in the respondent's first-aid office, testified that the claimant came into the office on Monday and reported that his back hurt. Polley asked the claimant how he had hurt his back, and the claimant stated that he did not know, but that he did not hurt it at work. Polley told the claimant that they would complete a report, since it was customary to do so. Polley asked the claimant what he had done on the weekend, and the claimant responded that he had been to a party and had had his tires slashed, which he changed. The claimant told her that on Sunday he had washed windows.

On Tuesday, Polley talked to the claimant on the telephone. The claimant told her that he had been to the doctor and that the doctor had taken him off work. At this time, the claimant told her that he had discussed his injury with his friends and that they had decided he had hurt his back on Saturday as he was leaving work. The claimant told her that he had run and stepped over the ditch and hurt his back. On cross-examination, Polley did not recall the claimant stating that his activities of the weekend caused him pain.

Stephanie Hoffman, the respondent's registered nurse, testified that she talked to the claimant on the telephone on November 6, 1984, when he called in to make an accident report on his back. The claimant explained to her that he had walked to the car, jumped a ditch full of water, and hurt his back. The claimant told her he had seen a doctor that day and that the doctor had taken him off work. She too testified that the claimant stated he had talked to friends about what he might have done at work to hurt his back, and he remembered he had jumped the ditch as he was leaving work on Saturday.

Harry Berner testified that he was a safety engineer for the respondent and that he had investigated the claimant's accident. Berner talked to Brady about the accident and took photographs of the area where the incident occurred. Berner stated he had walked off the distance from the area where the claimant had jumped the ditch to the walkway to the north and to the roadway to the south of the accident

site. He determined that the walkway to the north of the accident site was approximately 50 feet away and that the roadway was likewise approximately 50 feet to the south of the site. Berner explained that he was aware of the respondent's safety regulations and that all new employees attended a safety indoctrination. Additionally, he stated that the employees had been advised in weekly safety newsletters not to run on the project site. The safety newsletters had also discussed the prohibition against taking shortcuts on numerous occasions.

According to Berner, when an employee has broken the safety rules regarding running or taking shortcuts, that employee is issued a safety violation. The safety violation is issued to the employee through his supervisor, the employee signs the safety violation, and then the safety violation is returned to the safety department for filing. Berner stated that the claimant was cited for a safety violation as a result of the claimant's accident of November 3, 1984. Berner testified that approximately 10 to 15 people have been issued safety violations for jumping the ditch as the claimant had done; however, Berner did not know whether these persons had been cited before or after the claimant's accident. Berner admitted he had no knowledge as to whether the employees continued to jump over the ditch. Berner believed that the claimant had stated in his accident report that he had been running before he jumped the ditch.

The claimant was recalled and he conceded it was possible that he had told Helen Polley that he had no recollection of hurting himself on the job. He further admitted that he had told Brady he could not recall when he was hurt as he was not bothered on Saturday or Sunday with pain. The claimant said that it was Brady who suggested that he had hurt himself when he jumped the ditch and that it was subsequent to their discussion that he called the respondent's first-aid office to report his injury.

At the conclusion of the hearing, the arbitrator stated that the safety rule violated by the claimant was not written anywhere and that she was unable to make a finding that the claimant was running. The arbitrator concluded that the claimant had only hopped over the ditch. The arbitrator stated in her written decision that the claimant's injuries occurred while walking from the plant site across the respondent's parking lot to the higher level parking area. The arbitrator found that there were two walkways which the claimant could have used to get to his car within 50 feet of either direction from where he had jumped the water onto the incline. She determined that the claimant had no reason to jump over the ditch, and that while other employees traversed the same incline as the claimant did, safety viola-

tions had been issued for this practice; however, she determined that it was unclear from the evidence whether the citations for safety violations were issued before or after the claimant's accident. Lastly, the arbitrator stated in her decision as follows:

"Based upon the preceding facts and prior Decisions of the Industrial Commission on Review the Arbitrator finds that . there was no reason for Petitioner to jump over the accumulated water onto the incline. The fact that Petitioner testified that other employees did at times traverse this same inclined area does not mean that the practice was required by the job or a reasonable expectation of the job. The fact that some people may choose to leave the work place in an unsafe manner does not make such voluntary acts compensable, nor is Respondent required to police the exit routes to prevent all unsafe voluntary acts."

The arbitrator concluded from her findings that the claimant's injuries did not arise out of or in the course of his employment. The Commission, without hearing any additional evidence, adopted the findings of the arbitrator and affirmed her decision.

On appeal, the claimant contends that the Commission's decision that the claimant's injuries did not arise out of or in the course of his employment was against the manifest weight of the evidence. His arguments on this issue are twofold. The claimant's first argument is that the knowing violation of a safety rule does not defeat a claim for workers' compensation benefits. Secondly, the claimant argues that the arbitrator's decision was based upon the claimant's negligence, which should not be an issue in a workers' compensation action.

■■ ■ For an employee's injuries to be compensable under the Act, the injuries must arise out of and in the course of his or her employment, and both elements must be present at the time of the accident to justify compensation. (*Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 509 N.E.2d 1005.) It has been held that injuries which occur on an employer's premises within a reasonable time before and after work arise "in the course of" employment. (*Archer Daniels Midland Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 210, 437 N.E.2d 609.) However, not all injuries which occur on an employer's parking lot "arise out of" employment. (*Archer Daniels Midland Co.*, 91 Ill. 2d 210, 437 N.E.2d 609.) To be compensable, the injury must have resulted from some risk of the employment and must be incidental to the anticipated normal use of the parking lot. (*Archer Daniels Midland Co.*, 91 Ill. 2d 210, 437 N.E.2d 609; *Aaron v. Industrial Comm'n* (1974), 59 Ill. 2d 267, 319 N.E.2d 820.) Where the injury has resulted

from a personal deviation by an employee (*Aaron*, 59 Ill. 2d 267, 319 N.E.2d 820 (employee spent 1½ to 2 hours at a tavern after work before returning to the parking lot)), or where the injury resulted from a risk personal to the employee and not incidental to the employment (*Fisher Body Division, General Motors Corp. v. Industrial Comm'n* (1968), 40 Ill. 2d 514, 240 N.E.2d 694 (employee injured when the battery of his car exploded in his face while trying to start his car at the end of his work day in employer's parking lot)), the injury is not compensable. The Commission's finding of whether an employee's injuries arose out of and in the course of employment is a question of fact, and the Commission's determination will not be overturned on review unless its decision is against the manifest weight of the evidence. *Archer Daniels Midland Co.*, 91 Ill. 2d 210, 437 N.E.2d 609.

■■ In the instant case, the Commission could have inferred that the claimant's injuries resulted from a personal risk assumed by the claimant. While the claimant's injuries were incurred upon the employer's premises and were incurred within a reasonable time after leaving his work duties, nevertheless, it is apparent that the claimant's injuries occurred while he was engaged in an activity which only benefitted himself and not his employer. Therefore, we find that the Commission's determination that the claimant's injuries did not arise out of and in the course of his employment was not against the manifest weight of the evidence.

■■ Lastly, we consider the claimant's arguments that a knowing violation of a safety rule does not destroy the compensability of an employee's injuries and that the Commission erroneously denied the claimant benefits because of his negligence in leaving the work place. We find these arguments to be without merit. The Commission did not base its determination on either of these criteria but found that the claimant's injuries were not a result of fulfilling any duties required of his employment.

For the foregoing reasons, the judgment of the circuit court of De Witt County confirming the Industrial Commission's decision is affirmed.

Affirmed.

BARRY, P.J., and McNAMARA, WOODWARD, and McCULLOUGH, JJ., concur.