B M S CATASTROPHE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Pamela Groene, Appellee).

Fourth District (Industrial Commission Division)   No. 4—91—0613WC

Opinion filed April 22, 1993.—Rehearing denied June 21, 1993.

Richard R. Harden, of Thomas, Mamer & Haughey, of Champaign, for appellant.

John F. Martin, of Dukes, Martin, Helm & Ryan, Ltd., of Danville, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Pamela Groene, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) for injuries sustained in a work-related accident on February 27, 1987, while employed by B M S Catastrophe, employer. Following a hearing on her application, the arbitrator held that claimant's injuries arose out of and in the course of her employment and that she was permanently and totally disabled as a result of her accident, thereby entitling her to compensation for life and to medical expenses of $2,070.93. On appeal, the Industrial Commission (Commission) affirmed the arbitrator's decision, and the circuit court of Vermilion County confirmed the Com-

mission's decision. Employer appeals arguing the Commission's decision is against the manifest weight of the evidence. We affirm.

At the hearing before the arbitrator, claimant testified she had worked as a supervisor for employer since 1983. In her capacity as supervisor, she was required to travel around the country and oversee cleanup crews engaged in fire and water restoration. Prior to February 27, 1987, claimant always had received excellent evaluations on her work.

On February 27, 1987, claimant was supervising the cleanup of a fire at a plant in Danville, Illinois. In the course of the day, claimant was walking on a catwalk upon which some boards were lying. Claimant tripped over the boards and struck her forehead on a steel beam. This caused her to fall down backward where she again hit her head, as well as her back, on some pipes. Immediately after, claimant was dizzy and nauseated. She asked her supervisor several times to let her get medical care, but the supervisor encouraged her to continue working. Claimant finished the job, which lasted almost a month. During this month, claimant had increasing problems with her head, neck, and other parts of her body. She suffered from dizziness and on occasion fell down. She also believed she was not making very good decisions. Once the job in Danville ended, claimant informed employer she needed to go home. Employer instead sent her to a new jobsite in Ohio. Claimant had to stop working, however, and returned home to seek medical treatment. Claimant last worked for employer on March 22, 1987, and has not been able to work at all since that time.

When claimant arrived home, she sought treatment at Lincoln General Hospital. She treated with several doctors, and eventually came under the care of Dr. James Bobenhouse. After conducting numerous tests, Dr. Bobenhouse prescribed physical therapy and medication, neither of which helped her condition. Claimant testified she stopped seeing Dr. Bobenhouse in 1989 because she could not afford to pay him. She also had to stop seeing Dr. Egger, a psychiatrist who had been treating her, for the same reason. Claimant had received workers' compensation benefits from employer until December 1988, at which time both her benefits and medical expenses were discontinued. Claimant further testified that, at present, she has blackouts, constant headaches, and pain in her neck and back which causes her legs and arms to go numb. She explained she does have a TENS unit, but does not use it because she cannot afford to buy the "sticky pads" the unit requires. Claimant admitted on cross-examination that during the month after her acci-

dent, she worked 9 to 9½ hours per day. She also admitted she had suffered from migraine headaches before her accident, but the headaches she now suffers from are different. The post-accident headaches also cause her to be sensitive to light and loud noises.

Dr. Bobenhouse, who testified by way of deposition, first saw the claimant on April 20, 1987, as a referral from an orthopedic surgeon. Claimant complained of ongoing problems with headaches, dizziness, forgetfulness, and neck pain, as well as numbness and tingling in her hands, since the accident in February 1987. Examination of claimant revealed tenderness at the base of the skull in the area of the greater occipital nerve. Dr. Bobenhouse diagnosed claimant as suffering from post-traumatic headaches with high cervical or upper neck muscle strain. He also believed claimant might be experiencing symptoms of thoracic outlet syndrome, a disorder often occurring after a neck injury in which muscle spasms develop in the neck and shoulders causing the nerves to become pinched as they travel through the shoulders into the arms resulting in tingling in the fingertips. Claimant was started on thoracic outlet syndrome exercises and physical therapy on her neck. Dr. Bobenhouse opined claimant's condition of ill-being was caused by her fall on February 27, 1987.

Dr. Bobenhouse next saw claimant in May 1987. At this visit, claimant complained of persistent headaches, weakness, shakiness, fatigue, memory loss, severe light sensitivity, intermittent numbness in her arms and legs, and a blackout during a severe headache. Claimant appeared to be in greater pain and more depressed than at her first visit. Dr. Bobenhouse believed claimant still was suffering from strained muscles in the back of the neck. He prescribed further pain medications and a TENS unit. He also noted claimant appeared to be developing an anxiety disorder.

At claimant's visit in July 1987, claimant reported increasing difficulties, including tingling and burning numbness of the hands and feet. She also informed him that just prior to her examination, she had been seen in a hospital emergency room for hyperventilation syndrome. Dr. Bobenhouse felt claimant's mental condition was deteriorating and her depression was increasing. Claimant appeared to be becoming more and more anxious and focused on her physical complaints.

Claimant next saw Dr. Bobenhouse in August. This time claimant complained of worsening pain in her neck, shoulders, arms, back and legs. She also reported having difficulty sleeping and becoming more forgetful. Examination revealed tenderness in the

paraspinal muscles of her neck, mid and lower back, as well as tenderness in the shoulders and in the posterior lateral neck areas. Claimant also exhibited muscle spasms in these areas. Dr. Bobenhouse explained the muscle spasms suggested an underlying injury. He also felt claimant had some element of fibrositis. Further medications and physical therapy were prescribed.

By her September visit, claimant's neck and shoulder pain had become severe, her arms and legs felt weaker and her memory was worse. Claimant informed Dr. Bobenhouse she believed the physical therapy was not helpful, and, in fact, was contributing to her problems. Claimant appeared very anxious and tense. She also exhibited continued muscle spasms in her neck and shoulders and severe tenderness in the greater occipital nerve areas at the back of the head, as well as in her lower back. Dr. Bobenhouse felt claimant had considerable depression and appeared to be quite preoccupied with her health. He injected her greater occipital nerves with numbing medications and arranged for biofeedback therapy for her neck pain.

By her visit in February 1988, claimant's condition still had not improved. In addition, she had developed a new complaint, a popping sensation in her neck and back and a "catch" in her lower back. Dr. Bobenhouse diagnosed chronic neck and back pain syndrome related to muscle spasm and strain, and possibly superimposed fibrositis. He referred claimant to a chiropractor and suggested pain clinic evaluation.

After examining claimant in December 1988, Dr. Bobenhouse diagnosed claimant's continued blackouts as being due to vasovagal syncope, claimant's memory problems as being related to depression rather than organic disease, claimant's muscle spasms as being due to severe neck and shoulder pains and low back pain, the tingling in her arms as being due to thoracic outlet syndrome, and the problems with her lower extremities as stemming from a mild compression of the sciatic nerves. He was not certain any definite forms of therapy would help claimant, as he believed her depression played a major role in her poor level of functioning. He suggested she have psychiatric evaluation.

Dr. Bobenhouse next saw claimant in January 1989. At that time, claimant had diffuse pains as well as continuing headaches and blackouts. An EEG revealed a few borderline areas of irritability of the brain in the central and temporal areas. Dr. Bobenhouse still believed the psychiatric portion of claimant's illness was the most incapacitating.

Dr. Bobenhouse's last visit with claimant occurred on October 26, 1989. Claimant continued to complain of headaches and neck and back pain with aching in the arms and legs. The physical examination revealed decreased range of motion in the neck in all directions, severe pain with neck movement, and muscle spasms in the neck, shoulder areas and upper mid-back region. Dr. Bobenhouse noted claimant appeared to be very depressed and frustrated with her continuing pains. He opined claimant was not employable because of her headaches, dizziness, blackout spells and depression. Dr. Bobenhouse further testified claimant was suffering from somatization disorder which impaired her ability to function beyond her physical injuries. The continuing presence of muscle spasms and of tightness in the neck and shoulder muscles in particular indicated, however, a prolonged pain syndrome related to cervical strain. Such spasms made it more likely that claimant's complaints were genuine. Dr. Bobenhouse concluded claimant's accident of February 27, 1987, was the precipitating event which led to her neck injury and subsequent depression and anxiety ultimately evolving into the somatization disorder.

Dr. Michael Egger testified by deposition that claimant came to his office in the spring of 1989 for a psychiatric examination. Claimant related the history of her accident of February 27, 1987, and of her symptoms and treatment. She also informed him of her lack of concentration, moodiness, restlessness, irritability, diffuse pain through much of her body, blackouts, memory difficulty, headaches and insomnia. After running a MRI to rule out gross structural injury to the brain, Dr. Egger opined claimant suffered from somatization disorder, a chronic condition in which a person has pain and a preoccupation with pain and bodily symptoms far in excess of any known organic pathology. Dr. Egger did believe claimant truly was in pain based upon her reports of pain, her appearance of considerable discomfort, her difficulty concentrating and her restricted movement. He also believed, however, claimant's preoccupation with the multitude of her aches and pains reached delusional proportions and clearly was incapacitating her. He found claimant to be totally nonfunctional to the extent she should not even drive a car or use any equipment requiring any degree of concentration. Dr. Egger did not believe claimant was malingering. He stated that "[t]his kind of worsening of symptoms and more and more preoccupation with feelings and a narrower and narrower view of life often characterizes chronic pain syndrome when it's not treated." Dr. Egger further opined claimant's somatization disorder was causally related to

her work accident of February 27, 1987. He further stated he did not believe claimant's mental condition was caused by something other than her work injury because she exhibited no pattern of similar symptoms in the past and because there was no other plausible source of such stress.

Numerous other medical and psychological reports admitted into evidence confirmed claimant's history of injury and treatment. No reports, however, established an organic basis for claimant's physical complaints.

On appeal, employer contends the Commission's determination that claimant's somatization disorder was causally connected to her work-related accident of February 27, 1987, is against the manifest weight of the evidence. We disagree.

■ It is well established that it is the province of the Commission to determine the credibility of witnesses, to resolve conflicts in the medical evidence and to determine causal connection between a claimant's condition of ill-being and his or her employment. (*Caterpillar, Inc. v. Industrial Comm'n* (1992), 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896; *Amoco Oil Co. v. Industrial Comm'n* (1991), 218 Ill. App. 3d 737, 747, 578 N.E.2d 1043, 1050.) It is just as well established that a psychological injury is compensable if it results from an accidental injury. (*Amoco Oil Co.*, 218 Ill. App. 3d at 747, 578 N.E.2d at 1050; *May v. Industrial Comm'n* (1990), 195 Ill. App. 3d 468, 487, 552 N.E.2d 258, 270. See also *City of Streator v. Industrial Comm'n* (1982), 92 Ill. 2d 353, 442 N.E.2d 497; *Veritone Co. v. Industrial Comm'n* (1980), 81 Ill. 2d 97, 405 N.E.2d 758.) If the determination of causal connection is not against the manifest weight of the evidence, the decision of the Commission will not be overturned on appeal. *Amoco Oil Co.*, 218 Ill. App. 3d at 747, 578 N.E.2d at 1050.

■ A causal connection between a condition of ill-being and a work-related accident can be established by showing a chain of events wherein an employee has a history of prior good health, and, following a work-related accident, the employee is unable to carry out his duties because of a physical or mental condition. (See *Pulliam Masonry v. Industrial Comm'n* (1979), 77 Ill. 2d 469, 471, 397 N.E.2d 834, 835; *Darling v. Industrial Comm'n* (1988), 176 Ill. App. 3d 186, 193, 530 N.E.2d 1135, 1140.) Here, the evidence revealed that prior to her work-related accident of February 27, 1987, claimant had good health and was an excellent employee. At the time of her accident, claimant suffered physical injuries to her neck, head and back. Shortly after her accident, claimant also began to

develop other symptoms, including depression and anxiety which Drs. Bobenhouse and Egger testified were a result of her ongoing pain stemming from the accident. Both Drs. Bobenhouse and Egger testified claimant's mental condition was causally connected to her employment. Dr. Egger specifically ruled out other stress factors in her life or claimant's own innate personality. Any evidence to the contrary was resolved in claimant's favor. Given such circumstances, we cannot say the decision of the Commission that claimant's mental condition was causally connected to her accident of February 27, 1987, is against the manifest weight of the evidence.

■■ Employer contends, however, that claimant also failed to show she was permanently and totally disabled. The determination of the extent of an employee's disability too is a question of fact for the Commission to resolve, and, on review, its decision will not be overturned unless against the manifest weight of the evidence. (*Amoco Oil Co.*, 218 Ill. App. 3d at 748, 578 N.E.2d at 1051.) Claimant's doctors testified she is unable to function. Other medical reports confirm that claimant is unable to sustain employment in her current condition and that somatization disorder, in general, responds poorly to treatment. The Commission quite reasonably could infer claimant would not be able to return to work given her mental and physical condition. We therefore conclude the Commission's determination that claimant was permanently and totally disabled is not against the manifest weight of the evidence.

For the aforementioned reasons, we affirm the judgment of the circuit court of Vermilion County confirming the decision of the Industrial Commission.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD and STOUDER, JJ., concur.