**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (1st) 181903WC-U

Order filed January 17, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

_____

| | | |
|---|---|---|
| EMMETT LANNON, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | Appeal No. 1-18-1903WC |
| | ) | Circuit No. 2018-L-50056 |
| | ) | |
| ILLINOIS WORKERS' COMPENSATION | ) | Honorable |
| COMMISSION, *et al.*, (S & C Electric | ) | James M. McGing, |
| Company, Appellant). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Hoffman, Hudson, Cavanagh, and Barberis concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1)  The circuit court erred by reviewing the Commission's accident and causation findings *de novo*, rather than under the manifest weight of the evidence standard; (2) the Commission's finding that the claimant failed to prove an accidental injury arising out of his employment with the employer was against the manifest weight of the evidence; but (3) the Commission's finding that the claimant failed to prove that the current condition of ill-being in his left shoulder was causally related to a work-related accident was not against the manifest weight of the evidence.

1

¶ 2    The claimant, Emmett Lannon, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2016)), seeking benefits for an injury to his left shoulder which he sustained on May 2, 2016, while he was working for S & C Electric Company (the employer).  After conducting a hearing, an arbitrator found that the claimant had sustained an accidental injury arising out of his employment with the employer on May 2, 2016, and that the current condition of ill-being in the claimant's left shoulder was causally related to that work-related accident.  The arbitrator awarded the claimant medical expenses and prospective medical care, including surgical repair of the torn rotator cuff in the claimant's left shoulder, as recommended by the claimant's treating orthopedic specialist.

¶ 3    The employer appealed the arbitrator's decision to the Illinois Workers' Compensation Commission (Commission).  The Commission unanimously reversed the arbitrator's decision. Applying our appellate court's decision in *Adcock v. Illinois Workers' Compensation Comm'n*, 2015 IL App (2d) 130844WC, the Commission found that: (1) the claimant was injured while "reaching," which presents a neutral risk; and (2) the claimant had failed to prove that the reaching he performed at work was either quantitatively or qualitatively different from acts of reaching performed by members of the general public.

¶ 4    The Commission also reversed the arbitrator's finding of causation.  The Commission noted that it was undisputed that the claimant suffered from a preexisting degenerative condition in his left shoulder at the time of the accident, and it found that the claimant had failed to prove that the May 2, 2016, work injury aggravated or accelerated his preexisting condition or otherwise causally contributed to his current-condition of ill-being.  In so holding, the Commission relied upon the opinion of the employer's section 12 medical examiner and rejected the contrary opinion of the claimant's treating orthopedic specialist, which failed to acknowledge

- 2 -

and account for the claimant's preexisting condition and which the Commission found to be conclusory.

¶ 5    The claimant sought judicial review of the Commission's decision in the circuit court of Cook County, which reversed the Commission's decision and reinstated the arbitrator's decision. Reviewing the Commission's decision *de novo*, the circuit court held that the claimant had sustained an accident arising out of his employment.  The circuit court agreed with the Commission that the act of reaching and pulling which caused the claimant's work injury presented a neutral risk under *Adcock*. However, the circuit court found that, because the claimant's job duties required him to reach up and pull a lever on a machine hundreds of times per day, the claimant was exposed to the neutral risk of reaching far more frequently than were members of the general public. The risk confronted by the claimant was therefore "distinctly associated with his employment."

¶ 6    The circuit court further held that the claimant had established causation. In support of this holding, the circuit court noted that the claimant had been engaging in a risk distinctive to his employment by reaching "hundreds of times per day for at least a decade" prior to his injury. The circuit court further observed that the claimant's previously asymptomatic shoulder condition became symptomatic while he was operating a machine at his workstation.  Based on these facts, the circuit court found that the May 2, 2016, work accident aggravated the claimant's preexisting shoulder condition.

¶ 7    This appeal followed.

¶ 8                                         FACTS

¶ 9    The claimant worked for the employer as a general machinist.  At the time of his injury in May 2006, the claimant had been employed in that capacity for approximately 25 years.  His job

- 3 -

duties required him to operate various machines including an "Iron Worker." The "Iron Worker" fabricates parts for electrical equipment by punching round holes of various sizes into pieces of metal. An employee operates the Iron Worker from a seated position, using a lever on his right side to hold the metal piece in place and another lever on his left side to punch a hole in it. The employee must reach up and pull down the lever on his left side to punch a hole in the metal part.[1] The claimant testified that the levers weighed approximately 15 to 20 pounds when being pulled downward, and that he pulled the levers between 100 and 200 times per day, depending on the jobs performed.

¶ 10    On May 2, 2016, the claimant suffered an injury to his left shoulder while operating the Iron Worker.  He testified that, after he stabilized a copper part in the machine by pulling down the right-side lever, he reached for the left-side lever in order to punch a hole in the copper part. As he reached down to pull the lever with his left hand, "something popped" in his left shoulder. (On cross-examination, the claimant clarified that his hand was on the left-side lever and he was pulling the lever down when he felt his shoulder "pop.")  He felt a stabbing pain and cried out, "my arm!" "my arm!"  He immediately reported the incident to his supervisor, Sydney Bolton.

¶ 11    That same day, the claimant sought treatment at the employer's medical clinic, complaining of severe left shoulder pain and an inability to move his left shoulder.  He then went to the emergency room (ER) at St. Francis Hospital.  The ER's record of that May 2, 2016, visit indicates that the claimant reported that "he was bending over to reach at an item and heard a pop

---

[1] The claimant testified that the Iron Worker is equipped with a foot pedal to punch a hole in the metal parts, but the pedal had been broken for 10 to 15 years.  Thus, workers had to pull the left-side lever down to punch holes in the parts.

in the left arm" accompanied by "immediate pain and inability to abduct the arm." Upon physical examination, the claimant exhibited a decreased range of motion in his left shoulder. The examining physician suspected a rotator cuff tear. According to a radiologist's report, x-rays of the claimant's left shoulder revealed "degenerative changes at the acromioclavicular joint" and "a high riding right humerus suggesting chronic rotator cuff injury."[2] There was no acute fracture, dislocation, or bone destruction. The claimant was discharged with a prescription for hydrocodone, was instructed to follow up with a physician, and was released to work restricted duty with his right hand only. The employer accommodated the claimant's work restrictions.

¶ 12     Two days later, the claimant saw his primary care physician, Dr. Farby. According to the claimant, Dr. Farby recommended that the claimant consult with an orthopedic surgeon.

¶ 13     On May 10, 2016, the claimant treated with Dr. Ronald Silver, an orthopedic specialist. Dr. Silver's record of that date indicates that the claimant was injured while operating a machine at work on May 2, 2016, when he "reached up to grab a lever to pull down and felt severe pain occur in his left shoulder." Upon physical examination, the claimant exhibited decreased range of motion and subacromial crepitation, and he tested positive for impingement. Dr. Silver ordered the claimant to undergo an MRI and to begin physical therapy. He prescribed Norco and Terocin patches for the claimant's pain, and he ordered a work restriction of light duty with no use of the left arm. The employer accommodated this restriction and provided the claimant with a light duty job.

---

[2] The reference to the claimant's "right" humerus in the report appears to be a typographical error, as the report indicates that x-rays were performed on the claimant's left shoulder only.

¶ 14    The claimant started physical therapy at the Lincolnwood Rehabilitation Center on May 18, 2016. The therapist's records indicate that the claimant told the therapist that he "felt a pop" when he "reached up for a lever at work."  The claimant continued physical therapy sessions three times per week up to the time of the arbitration hearing.

¶ 15    On May 19, 2016, an MRI was performed on the claimant's left shoulder.  The MRI revealed a chronic retracted full-thickness tear of the supraspinatus and infraspinatus tendons with moderate to severe muscle atrophy, a partial and interstitial tear of the subscapularis tendon, and biceps tendinosis.

¶ 16    The claimant returned to Dr. Silver on June 2, 2016.  Dr. Silver confirmed the "full thickness severely retracted" rotator cuff tear, gave the claimant a cortisone injection, ordered further physical therapy, and continued the claimant's right-hand-only work restriction, which was accommodated by the employer.  Dr. Silver also issued a short written note containing a causation opinion.  Dr. Silver's written note states, in its entirety, that "Emmett Lannon[']s left Rotator Cuff tear is due to his work injury on May 2, 2016.  Please feel free to contact my office with any questions."

¶ 17    The claimant returned to Dr. Silver on June 23, 2016.  At that time, he continued to exhibit the same symptoms and physical exam results. Dr. Silver ordered another steroid injection and continued the claimant's physical therapy and work restrictions. The claimant saw Dr. Silver again the following September, at which time Dr. Silver recommended either another injection or surgery.  The employer's workers' compensation insurance carrier refused to cover additional injections or surgery.

¶ 18    At the employer's request, the claimant was examined by Dr. Prasant Atluri, the employer's section 12 medical examiner, on August 26, 2016.  The claimant provided Dr. Atluri

a history of operating a punch press machine, repeatedly reaching up with his left arm to pull down a lever, and feeling a "pop" in his left shoulder while pulling the lever down. The claimant showed Dr. Atluri cell phone photos of the Iron Worker he was operating at the time of his injury. He told Dr. Atluri that, while using his right arm to keep one lever on the machine depressed, he had to reach above shoulder level with his left arm and pull down the other lever. He stated that he performed this maneuver "sometimes 300-400 times during a shift."

¶ 19    Dr. Atluri performed an x-ray of the claimant's left shoulder "for comparison purposes." The x-ray revealed a type 2 acromion, "arthritic changes at the glenohumeral joint," and "degenerative changes with inferior spurring at the acromioclavicular joint." After conducting a physical examination and after reviewing the claimant's medical records (including the employer's medical clinic records, the ER records from St. Francis Hospital, Dr. Silver's records, the claimant's prior and current x-ray films, and the physical therapist's notes), Dr. Atluri's impression was "chronic left shoulder rotator cuff arthropathy." He found that the claimant had chronic degenerative changes in his left shoulder indicative of a longstanding rotator cuff tear with secondary arthritic changes.

¶ 20    Dr. Atluri opined that the claimant's left shoulder condition was not work-related. He noted that the claimant indicated that the sudden onset of his symptoms occurred when he was pulling down on a lever, and that this account was contradicted by some of the claimant's medical records which documented a "different mechanism of injury." Specifically, Dr. Atluri observed that "some of the written materials indicate that the patient initially reported an onset of symptoms when his arms were below shoulder level while he was moving material with his hands as opposed to when he was pulling on a lever." Nevertheless, Dr. Atluri noted that "[r]egardless of which history is accepted as accurate, the maneuver described [by the claimant]

- 7 -

would not be expected to cause, or contribute to, this patient's left shoulder condition," and that "[r]eaching upwards and pulling downward, without significant force, even when done repetitively, could not have caused or contributed to this patient's left shoulder condition."

¶ 21    Sidney Bolton, the employer's senior team leader and the claimant's supervisor, testified on behalf of the employer. Bolton was at work at the time of the claimant's accident on May 2, 2016. Bolton did not witness the accident, but he heard the claimant scream and complain of pain in his left arm immediately after it happened. Bolton testified that, when he asked the claimant what he was doing when he hurt his arm, the claimant said he was "reaching for a lever and he heard a pop." According to Bolton, the claimant did not previously complain of any shoulder pain or injury during the past two years.

¶ 22    Bolton took photographs of the Iron Worker which were entered into evidence during the arbitration hearing. The photographs depicted Lawrence Collins, one of the claimant's coworkers, operating the machine. Bolton testified that the photographs he took accurately depicted the type of machinery the claimant was working on the day he was injured. He further stated that he had observed the claimant operating the Iron Worker and that the photographs he took of Collins operating the Iron Worker accurately depicted where the claimant's arms would be while he was operating that machine.[3] Specifically, Bolton testified that, while reaching up and pulling down the left-side lever, the claimant's left arm would be elevated to about shoulder level, and his left hand could be above his head. Bolton noted that, at the time of his accident, the claimant was using the Iron Worker to punch holes in a part that weighed approximately one

---

[3] Although Bolton acknowledged that Collins was taller than the claimant, he noted that the chair in front of the Iron Worker was adjustable and could be moved up and down as needed.

pound.  Bolton stated that it takes one or two pounds of force to pull down each of the levers on the Iron Worker, and that a lever could be pulled down with one or two fingers.

¶ 23     Kathleen Clawson, a registered nurse who manages the employer's medical clinic, also testified on the employer's behalf.  Clawson testified that she had a telephone conversation with the claimant on May 3, 2016, the day after his work accident.  Clawson stated that she recorded the details of the conversation in an electronic record.  Consistent with that electronic record, Clawson testified that the claimant told her by telephone and, later, in person, that "he was working and all of a sudden his arm hurt, and at that time he was moving one part to the other and he didn't know why it would hurt." According to Clawson, the claimant said that was injured while transferring a part and that he was not operating the Iron Worker at the time he was injured.

¶ 24     After speaking with the claimant, Clawson inspected the Iron Worker machine.  She testified that she did not have to pull down hard on the lever and that she did not feel any stress on her rotator cuff when she did so.  However, during cross-examination, Clawson acknowledged that: (1) when she operated the machine, she was not fabricating a part as there was no metal piece inside the Iron Worker; and (2) she had never witnessed the claimant operating the Iron Worker machine and did not know the exact position his arm was in while operating it.  Clawson informed the claimant that his injury would likely not be "picked up by Workers Comp."  However, Clawson did not make a final decision on the matter until she reviewed the ER treatment records from St. Francis Hospital.

¶ 25     During his testimony, the claimant acknowledged that he had a telephone conversation with Clawson on May 3, 2016, and that he met with her at the employer's medical clinic later that day.  However, the claimant testified that Clawson did not ask him how he was injured.  The

claimant testified that he was injured while pulling down the left-side level of the Iron Worker with his left hand, and he denied giving any differing accounts of the mechanics of his injury to Dr. Silver, to anyone at St. Francis Hospital, or to Clawson. (Specifically, the claimant denied telling anyone that he was injured while "reaching" for the lever or while transferring a part.) After reviewing the photographs taken by Bolton, the claimant agreed that the photographs accurately depicted how he would operate the left and right levers of the Iron Worker. The claimant testified the force involved in pulling the lever down is dependent on the weight of the part; the heavier the weight of the metal, the more effort used in pulling the lever. The claimant agreed that, at the time of the accident, he was working on a part weighing one pound.

¶ 26    At the time of the arbitration hearing, the claimant was still working restricted duty and undergoing physical therapy, he was still experiencing left shoulder pain, and he was awaiting the employer's authorization for further injections and possible surgical treatment recommended by Dr. Silver. The claimant testified that, prior to his May 2, 2016, work accident, he was working full duty and did not have any problems with his left shoulder.

¶ 27    The arbitrator found that the claimant had sustained an accidental injury arising out of his employment with the employer on May 2, 2016, and that the current condition of ill-being in the claimant's left shoulder was causally related to that work-related accident. The arbitrator awarded the claimant medical expenses and prospective medical care, including surgical repair of the torn rotator cuff in the claimant's left shoulder as recommended by Dr. Silver.

¶ 28    The employer appealed the arbitrator's decision to the Commission. The Commission unanimously reversed the arbitrator's decision. The Commission found that the claimant had failed to prove that he sustained an accident arising out of his employment. The Commission noted that, although the claimant gave differing accounts of the mechanics of his May 2, 2016,

- 10 -

work injury, he consistently indicated that the injury occurred while he was "reaching" for something at work (either for a lever on a machine or for a part placed on the surface of the machine). Applying our decision in *Adcock*, the Commission found that the act of reaching was a neutral risk, and it analyzed the claimant's claim under neutral risk principles. The Commission concluded that that the claimant had failed to prove that the reaching he performed at work was either quantitatively or qualitatively different from acts of reaching performed by members of the general public. It therefore reversed arbitrator's finding of a work-related accident.

¶ 29     The Commission also reversed the arbitrator's finding of causation. The Commission noted that it was undisputed that the claimant suffered from a preexisting degenerative condition in his left shoulder at the time of the accident. Thus, it was the claimant's burden to prove that the May 2, 2016, work accident causally contributed to his current condition of ill-being (for example, by aggravating or accelerating the preexisting condition) and that his current state of ill-being was not the result of the preexisting degenerative condition alone. The Commission found that the claimant had failed to satisfy this burden. Dr. Atluri opined that the acts of reaching and/or pulling that the claimant was performing at the time of the accident, "without significant force," "could not have caused or contributed to [the claimant's] left shoulder condition," "even if done repetitively." Although Dr. Silver, the claimant's treating orthopedic specialist, opined in conclusory fashion that the claimant's left rotator cuff tear was "due to [the claimant's] work injury on May 2, 2016," the Commission found Dr. Silver's opinion to be "of little persuasive value" because it "ignores the diagnostic testing of x-ray and MRI which evidence a severely degenerative condition" in the claimant's left shoulder. Accordingly, the Commission afforded greater weight to Dr. Atluri's opinion and concluded that: (1) the claimant had "failed to prove [that] his preexisting degenerative condition was aggravated by his act of

- 11 -

reaching" at work on May 2, 2016 and (2) the claimant had failed to prove a causal relationship between a work-related accident and his resulting condition of ill-being. The Commission therefore denied all of the claimant's claims for benefits.

¶ 30    The claimant sought judicial review of the Commission's decision in the circuit court of Cook County, which reversed the Commission's decision and reinstated the arbitrator's decision. The circuit court reviewed the Commission's decision *de novo* because it concluded that the relevant facts were undisputed and "[t]he only question is whether the Commission properly applied the law." The circuit court held that the claimant had sustained an accident arising out of his employment. Applying *Adcock*, the circuit court agreed with the Commission that the act of reaching and pulling which caused the claimant's work injury presented a neutral risk. However, the circuit court found that, because the claimant's job duties required him to reach up and pull a lever on a machine hundreds of times per day, the claimant was exposed to the neutral risk of reaching far more frequently than were members of the general public. The risk confronted by the claimant was therefore "distinctly associated with his employment."

¶ 31    The circuit court further held that the claimant had established causation. In support of this holding, the circuit court noted that "[b]ecause [the claimant] had been engaging in a risk distinctive to his employment by reaching hundreds of times per day for at least a decade prior to his injury, and because "[the claimant's] asymptomatic condition became symptomatic while he was operating" the Iron Worker, "it is impossible that this action did not contribute in some way to his current shoulder condition." The circuit court suggested that its finding of causation flowed directly from its finding that the claimant confronted a risk distinctly associated with his employment. The circuit court held that, "[o]nce the proper risk analysis is applied, it is clear that [the claimant's] work injury aggravated his previously asymptomatic condition. Therefore,

- 12 -

there is a causal relationship between [the claimant's accident] and his current shoulder condition."

¶ 32    This appeal followed.

¶ 33                                    ANALYSIS

¶ 34                              1. Standard of Review

¶ 35    As an initial matter, the parties dispute the standard of review that we should apply when reviewing the Commission's decision in this case.

¶ 36    The claimant argues that we should review the Commission's decision *de novo* because "the facts in this case are undisputed and are susceptible to only a single reasonable inference." The circuit court agreed; it reviewed the Commission's decision *de novo* because it concluded that the relevant facts were undisputed and "[t]he only question is whether the Commission properly applied the law." The employer argues that the circuit court erred and that the Commission's decision should be reviewed under the manifest weight of the evidence standard because several relevant facts are disputed.

¶ 37    We agree with the employer. Contrary to the circuit court's conclusion, the evidence in this case presents several material factual disputes, including: (1) whether the claimant was injured while pulling a lever on the Iron Worker, while reaching for the lever, or while transferring a part; (2) the degree of force that had to be applied to the lever at the time of the claimant's injury; (3) whether reaching for and/or pulling down the lever with the requisite degree of force could have causally contributed to the claimant's current condition of ill-being. The Commission had to resolve conflicts in the testimony presented by various witnesses as to these issues (including medical experts) and determine the relative weight to assign to each witness's testimony. Moreover, although certain material issues were undisputed (such as the

- 13 -

existence of the claimant's preexisting shoulder condition), the Commission had to choose among competing reasonable inferences supported by the evidence when determining causation. For example, the Commission had to determine whether the claimant's preexisting condition was aggravated or accelerated by the May 2, 2016, work accident, or whether his current condition of ill-being was solely attributable to the natural progression of his preexisting condition. Such questions of fact are within the Commission's province, and we may overturn the Commission's findings on these questions only when they are against the manifest weight of the evidence. *Freeman United Coal Co. v. Industrial Comm'n*, 318 Ill. App. 3d 170, 173-74 (2000); see also *Caterpillar Tractor Co. v. Industrial Comm'n,* 92 Ill. 2d 30, 36–37 (1982).

¶ 38    The circuit court applied an erroneous standard of review. We will review the Commission's accident and causation findings under the manifest weight of the evidence standard.

¶ 39                                        2. Accident

¶ 40    Applying our decision in *Adcock*, the Commission found that the claimant failed to prove that he sustained an accident arising out of his employment on May 2, 2016, because: (1) the claimant was injured while "reaching," which presents a neutral risk; and (2) the claimant failed to prove that the reaching he performed at work was either quantitatively or qualitatively different from acts of reaching performed by members of the general public. That was error. As an initial matter, a majority of our court recently overruled *Adcock* and ruled that risks are distinctly associated with a claimant's employment whenever "the injury-producing act was required by the claimant's specific job duties," even if the injury-producing act is an activity of daily living, like reaching or pulling. *McAllister v. Workers' Compensation Comm'n*, 2019 IL App (1st) 162747WC, ¶ 48. Under *McAllister*, if the injury-producing act was required by the

- 14 -

claimant's job duties, the claimant has established an accidental injury arising out of his employment by that fact alone, and there is no need to perform a neutral risk analysis (*i.e.*, the claimant need not also prove that the risks presented by the injury-causing activity were quantitatively or qualitatively greater than the risks faced by members of the general public). *McAllister*, 2019 IL App (1st) 162747WC.

¶ 41     In this case, the Commission found that the claimant was injured while "reaching" for something at work (either for the left-side lever on the iron Worker or for a part to put into the Iron Worker).  It is undisputed that the claimant's job duties required him to use the Iron Worker to fabricate metal parts.  In order to do that, the claimant had to place metal parts on the machine and reach up to pull a lever to punch holes in the metal parts. Accordingly, under *McAllister*, the claimant's accidental injury arose out of his employment. *Id.  McAllister* is currently on review before our supreme court.  However, *McAllister* is currently good law, and its holding dictates that the Commission erred by applying a neutral risk to the claimant's claim and by finding that the claimant failed to prove an accident arising out of his employment.

¶ 42     Moreover, even if our supreme court reverses *McAllister* and upholds *Adcock*, we would still reverse the Commission's finding on the issue of accident.  The evidence in this case establishes that the claimant's employment required him to place metal parts on the Iron Worker and reach up over his head to pull down a lever with his left hand somewhere between 100-400 times per day.  Thus, the claimant was exposed to a risk of everyday living (reaching up over one's head and pulling down a lever with minimal force or reaching for an object) far more frequently than are members of the general public. Even under the neutral risk analysis prescribed by *Adcock*, the claimant has demonstrated that the neutral risk that led to his injury

- 15 -

was quantitatively increased by virtue of his employment, and therefore arose out of his employment.

¶ 43    Accordingly, the Commission erred in finding that the claimant failed to establish an accidental injury arising out of his employment.

¶ 44                                    3.  Causation

¶ 45    The Commission found that the claimant had failed to establish that his May 2, 2016, work accident was causally connected to the current condition of ill-being in his left shoulder and his need for surgery and other prospective medical care.

¶ 46    To obtain compensation under the Act, a claimant must prove that some act or phase of his employment was a causative factor in his ensuing injuries. *Land & Lakes Co. v. Industrial Comm'n*, 359 Ill. App. 3d 582, 592 (2005). A work-related injury need not be the sole or principal causative factor, as long as it was *a* causative factor in the resulting condition of ill-being. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 205 (2003). Thus, even if the claimant had a preexisting degenerative condition which made him more vulnerable to injury, recovery for an accidental injury will not be denied as long as he can show that his employment was also a causative factor. *Sisbro*, 207 Ill.2d at 205; *Swartz v. Industrial Comm'n*, 359 Ill. App. 3d 1083, 1086 (2005). A claimant may establish a causal connection in such cases if he can show that a work-related injury played a role in aggravating his preexisting condition. *Mason & Dixon Lines, Inc. v. Industrial Comm'n,* 99 Ill. 2d 174, 181 (1983); *Azzarelli Construction Co. v. Industrial Comm'n*, 84 Ill. 2d 262, 266 (1981); *Swartz*, 359 Ill. App. 3d at 1086.

¶ 47    Whether a claimant's condition of ill-being is attributable solely to a degenerative process of her preexisting condition or to an aggravation or acceleration of that preexisting condition because of a work-related accident is a factual determination to be decided by the Commission.

- 16 -

*Sisbro*, 207 Ill. 2d at 205-06. In resolving disputed issues of fact, including issues related to causation, it is the Commission's province to assess the credibility of witnesses, draw reasonable inferences from the evidence, determine what weight to give testimony, and resolve conflicts in the evidence, particularly medical opinion evidence. *Hosteny v. Illinois Workers' Compensation Comm'n*, 397 Ill. App. 3d 665, 675 (2009); *Fickas v. Industrial Comm'n*, 308 Ill. App. 3d 1037, 1041 (1999). We will overturn the Commission's causation finding only when it is against the manifest weight of the evidence. A factual finding is against the manifest weight of the evidence if the opposite conclusion is "clearly apparent." *Swartz*, 359 Ill. App. 3d at 1086. The test is whether the evidence is sufficient to support the Commission's finding, not whether this court or any other tribunal might reach an opposite conclusion. *Pietrzak v. Industrial Comm'n*, 329 Ill. App. 3d 828, 833 (2002).

¶ 48 Applying these standards, we cannot say that the Commission's conclusion that the claimant failed to prove that his current condition of ill-being is causally related to his May 2, 2016, work accident was against the manifest weight of the evidence. After examining the claimant, performing an x-ray on the claimant's left shoulder, and reviewing the claimant's medical records (including the employer's medical clinic records, the ER records from St. Francis Hospital, Dr. Silver's records, the claimant's prior and current x-ray films, and the physical therapist's notes), Dr. Atluri opined that the various mechanisms of injury described by the claimant "would not be expected to cause, or contribute to, this patient's left shoulder condition." Specifically, Dr. Atluri concluded that "[r]eaching upwards and pulling downward, without significant force, even when done repetitively, could not have caused or contributed to this patient's left shoulder condition." Although Dr. Silver presented a contrary opinion, the Commission found Dr. Silver's opinion to be "of little persuasive value" because it "ignore[d]

- 17 -

the diagnostic testing of x-ray and MRI which evidence a severely degenerative condition" in the claimant's left shoulder. Dr. Silver's opinion (which was the only causation opinion presented by the claimant), did not even acknowledge the claimant's preexisting left shoulder condition, much less opine that the particular alleged mechanism of injury during the claimant's May 2, 2016, work accident could have aggravated or accelerated his preexisting condition. Accordingly, the Commission afforded greater weight to Dr. Atluri's opinion. It was the Commission's province to resolve conflicts in the medical opinion testimony and to determine weight to be given to each opinion. On this record, we cannot say that the Commission's decision to credit Dr. Atluri's opinion over Dr. Silver's opinion was against the manifest weight of the evidence.[4]

---

[4] The arbitrator found that Dr. Atluri's causation opinion was not credible because: (1) Dr. Atluri failed to review the MRI of the claimant's left shoulder before rendering his opinion; and (2) Dr. Atluri opined that that reaching up and pulling down the lever on the Iron Worker "without significant force" could not causally contribute to the claimant's injury, but Dr. Atluri's report "is silent as to the amount of force required to operate the machine in question"; and (3) Dr. Atluri determined that the claimant's condition was the result of a long-standing rotator cuff tear "even though there is no credible evidence of prior injuries." We disagree. Dr. Atluri reviewed almost all of the relevant medical records, including two sets of x-rays that showed an advanced degenerative condition in the claimant's left shoulder (one of which was taken immediately after the work accident). Moreover, at the time of the accident, the claimant was operating the Iron Worker on a copper part that weighted approximately one pound, and Bolton testified that it takes only one or two pounds of force to pull down each of the levers on the Iron Worker and that each lever could be pulled down with one or two fingers. In addition, Dr. Atluri opined that the claimant's rotator cuff tear was caused by his preexisting degenerative shoulder condition, not by any prior traumatic injury. Thus, contrary to the arbitrator's suggestion, Dr. Atluri's causation opinion was credible and had ample foundation in the evidence.

- 18 -

¶ 49    The claimant argues (and the circuit court ruled) that the May 2, 2016, work accident aggravated the claimant's preexisting degenerative shoulder condition by rendering it symptomatic and disabling.  Prior to the work accident, the claimant had no shoulder symptoms and was able to work full duty without restrictions.  After the accident, the claimant immediately suffered shoulder pain and has not been able to work fully duty. "A causal connection between a condition of ill-being and a work-related accident can be established by showing a chain of events wherein an employee has a history of prior good health, and, following a work-related accident, the employee is unable to carry out his duties because of a physical or mental condition." *Kawa v. Illinois Workers' Compensation Comm'n*, 2013 IL App (1st) 120469WC, ¶ 96 (quoting *BMS Catastrophe v. Industrial Comm'n,* 245 Ill. App. 3d 359, 365 (1993)) see also *Caterpillar Tractor Co.*, 92 Ill. 2d at 36–38 (medical opinion testimony that claimant's work-related accident rendered preexisting condition symptomatic supported Commission's finding of causation).  We do not find this argument persuasive. Although the Commission could have inferred that the claimant's left should condition was caused or aggravated by the May 2016 work accident based upon a "chain of events" analysis, it was not required to do so given Dr. Atluri's credible medical testimony (which supported a contrary inference). As noted above, "[t]he question of whether a claimant's disability is attributable to a degenerative condition or, because of an accident, to an aggravation of a preexisting condition, is a question of fact to be decided by the *** Commission" (*Caterpillar Tractor Co.*, 92 Ill. 2d at 37), and it is the Commission's province to weight the evidence, draw reasonable inferences based on the evidence, and resolve conflicts in the evidence (*Hosteny*, 397 Ill. App. 3d at 675; *Fickas*, 308 Ill. App. 3d at 1041).  We cannot say that the Commission's finding of no causation was against the manifest weight of the evidence, *i.e.*, that a finding of a causal connection between the work

- 19 -

accident and the claimant's current condition of ill-being was "clearly apparent." The circuit court erred by failing to apply the required level of deference to the Commission's determination of factual issues and by assuming that the onset of pain symptoms during a work-related activity established causation as a matter of law.

¶ 50    The circuit court also appeared to suggest that the claimant could establish causation under a repetitive trauma theory.[5] At one point in its written opinion, the circuit court noted that the fact that the claimant engaged in a risk distinctive to his employment by reaching "hundreds of times per day for at least a decade prior to his injury" established causation. This analysis improperly conflates proof of an accident "arising out of" the employment with proof of causation. Accident and causation are two separate issues under the Act. Each must be separately proven to obtain compensation.

¶ 51    In any event, the claimant did not argue his claim under a repetitive trauma theory, and his medical expert did not opine that his current condition of ill-being was the result of a repetitive trauma. Accordingly, the claimant may not establish causation in this case under a repetitive trauma theory. An employee who alleges injury based on repetitive trauma must "show [ ] that the injury is work related and not the result of a normal degenerative aging process." *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524, 530 (1987); *Edward Hines Precision Components v. Industrial Comm'n,* 356 Ill. App. 3d 186, 194 (2005). In repetitive trauma cases, the claimant "generally relies on medical testimony establishing a causal connection between the work performed and claimant's disability." *Nunn v.*

_____

[5]  The arbitrator also found that the claimant's current condition of ill-being "could have been caused by the repetitive use of his left shoulder in completing his job duties" and that "[t]his type of repetitive use of one's arm above their head could certainly cause a pre-existing rotator cuff injury to become painful."

*Illinois Industrial Comm'n*, 157 Ill. App. 3d 470, 477 (1987); see also *Johnson v. Industrial Comm'n*, 89 Ill. 2d 438, 442–434 (1982). Although medical testimony as to causation is not required in every workers' compensation case, where the question is one within the knowledge of experts only and not within the common knowledge of laypersons, "expert testimony is necessary to show that claimant's work activities caused the condition complained of." *Nunn*, 157 Ill. App. 3d at 478; see also *Johnson*, 89 Ill. 2d at 442–43. "Cases involving aggravation of a preexisting condition primarily concern medical questions and not legal questions, [citation]" and "[t]his is especially true in repetitive trauma cases." *Nunn*, 157 Ill. App. 3d at 478. Thus, repetitive trauma claims involving the alleged aggravation of a preexisting condition cannot succeed unless the claimant presents medical testimony suggesting that: (1) he had a preexisting condition that was or could have been aggravated by his repetitive work activities; and (2) his current condition of ill-being was or could have been caused (at least in part) by this work-related repetitive trauma and is not simply the result of a normal, degenerative aging process. The claimant presented no such medical testimony in this case.

¶ 52    Accordingly, the Commission's finding of no causation was not against the manifest weight of the evidence. We affirm and reinstate the Commission's decision on that basis.

¶ 53                                      CONCLUSION

¶ 54    For the foregoing reasons, we affirm the circuit court of Cook County's reversal of the Commission's finding of no work-related accident. However, we reverse that portion of the circuit court's judgment which reversed the Commission's finding of no causation, and we reinstate the Commission's finding on the causation issue.

¶ 55    Circuit court judgment affirmed in part and reversed in part; Commission decision reinstated in part.